Mrs. Albert W. EDWARDS, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 673.

United States District Court
M. D. Georgia,
Columbus Division.

July 1, 1958.

Swinson, Elliott & Schloth, Columbus, Ga., Wm. J. Schloth, Columbus, Ga., of counsel, for plaintiff.

Frank O. Evans, U. S. Atty., Jos. H. Davis, Asst. U. S. Atty., Macon, Ga., for defendant.

DAVIS, Chief Judge.

This is an action for damages against the United States brought pursuant to the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346(b) and 2671 et seq. The Plaintiff here is seeking to recover for the life of her son, who was killed as the result of the explosion of a 30-caliber blank shell. Because of the involved circumstances surrounding the accident, the facts found by the Court will be set forth in narrative form.

For some years prior to September, 1956, Walter Redmond lived with his family on the Old Macon Road directly across the road from Fort Benning Military Reservation. During the period from December, 1955 to September, 1956, Redmond often went upon the reservation in search of ammunition and various items of military equipment or "souvenirs". At this time, according to his testimony, there were signs on the reservation side of the road reading "Danger, Firing Area, Keep Out", or

words to that effect. During this period Redmond was approximately 13 years of age. He was well versed in the general subjects of military explosives and military equipment. His knowledge along these lines was more extensive than that of an average adult. On many of his trips onto the reservation he was accompanied by Randy Brewer, who was 14 years old at the time. Brewer had been warned against entering the Reservation and about playing with shells. He testified that he knew he should not enter the Reservation. Redmond was also aware that he should not enter the Reservation and had been warned by soldiers not to fool with shells.

Brewer and Redmond often found 30-caliber blank shells on the reservation and carried them home. On one occasion Redmond, while alone, found some 30-caliber blank shells in boxes. The boxes bore this printing: "Dangerous within 30 feet". These shells were apparently found on the right-of-way of the Old Macon Road about 1 to 5 feet off the military reservation. Redmond had seen troops firing in that area frequently but did not enter the Reservation while firing was in progress. He had carried ice water to soldiers on 2 or 3 occasions but, when he went hunting shells, he was not invited to enter the premises and was not an invitee.

There is no evidence as to how the 30-caliber blank shells came to be on the right of way of the Old Macon Road. There is no direct evidence that ammunition was ever abandoned by the troops, but "thousands of rounds" were found on the Reservation by Redmond and Brewer.

The area of the Reservation adjoining the road in front of the Redmond house had been used exclusively by the United States Third Infantry Division during the time Redmond found the ammunition. The Third Infantry Division is a unit of the Department of the Army and its members are employees of the United States.

In September or October, 1956, Walter Redmond moved into Columbus, Georgia, taking with him his supply of ammunition, including one or more of the boxes of 30-caliber blanks, which he had picked up on the right of way of the road. The box was picked up some time during the period December, 1955 to August, 1956.

During the fall of 1956, Redmond met Jim Lawson, then a boy of 11 years. He showed Lawson his shells and gave him a box of the 30-caliber blanks, the box bearing the warning mentioned above. He showed Lawson how to remove the powder from the shells.

A short time thereafter, Lawson and another friend, Mike Pound, were playing with the shells at Mike Pound's house. They removed the powder from some of the rounds and burned it. After removing the powder, they shot at the shells with their BB-guns in an effort to explode the primer cap. While they were thus engaged, Mike Cochran, 11 years of age, joined them and saw Pound shoot at some of the shells. Lawson gave Mike Cochran three shells from the box, only one of which contained powder.

That evening Mike Cochran showed the shell to his mother. He told her about the boys shooting at the shells with the BB-guns. She elicited from him a promise that he would not do that. She warned him that a piece of it might fly back and hit him in the eye. She suggested that he show the shell to his father.

The father, W. H. Cochran, was not familiar with that type shell but told Mike that it apparently was not dangerous. Mike testified that he did not think the shell was dangerous and he carried it to school the next day in his pocket.

That afternoon, December 12, 1956, Mike Cochran and Rickey Edwards, the deceased, were out back of the Cochran house cutting some greenery for Christmas. Mike told Rickey about the shell and asked if he would like for them to shoot at it. Rickey agreed and Mike went to his house for his BB-gun. Rickey asked to be allowed to shoot first. Mike stuck the shell into the ground and Rickey fired twice, missing both

shots. Rickey then pushed it more firmly into the ground and, holding the gun close to the cap, fired the third time. The shot struck and exploded the primer cap. Because the shell was confined in the ground, this explosion caused the shell casing to rupture. A small piece of the casing struck Rickey in the jugular vein. He died moments later from loss of blood.

This 30-caliber blank shell is considered one of the safest of military explosives and cannot explode without some outside force being applied to the primer cap. The firing of the shell would almost never cause the casing to rupture unless it were confined, as it was here. They are shipped freely by common carrier.

■ The first question for determination is whether or not the Plaintiff has established the negligence of the Defendant by or through its employees. It is true, as held in Williams v. U. S., 5 Cir., 1958, 252 F.2d 887 that the Plaintiff need not prove a particular act of negligence by a particular employee of the Defendant. Still, there must be proof that the United States has, through its agents or employees, been guilty of some act of omission or commission constituting negligence. Previous ownership of the instrumentality is not alone sufficient. Dalehite v. U. S., 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427.

There is no evidence sufficient to satisfy the Court that these shells were left on the right of way of the Old Macon Road by soldiers. Clearly, others had entered the Reservation and removed ammunition. The evidence discloses that Brewer and Redmond had frequently entered a considerable distance onto the Reservation and picked up shells. The evidence does not definitely establish that this particular shell was not removed from the Reservation by Redmond. He testified that he could be certain as to the spot where he found this shell because it was in a white box and he never picked up similar boxes of shells but once. He said he picked them up on the Reservation but the distance from

the paved road, as testified to by him, would place the spot about five feet off the Reservation and on the right of way. The way the boys hunted shells and played with the shells, it would not be surprising if the shells became mixed and this shell actually came from the Reservation. But, assuming as argued by the Plaintiff, that this shell was picked up outside the Reservation, other boys may have left the shells where he found them. There is no evidence bearing on this point. From the fact that the shells were in boxes, one might as easily infer that they were stolen and put there.

If the shells were discarded by an employee of the United States, there is no evidence that this was done within the scope of employment. These two important elements, essential to a recovery, can only be supplied by inference. On the basis of the evidence here, the Court is not willing to make such an inference. There is no evidence sufficient to show a breach by the Defendant of any duty to clean up the area in which these shells were found.

■ The Court concludes that the evidence does not establish the negligence of the Defendant, so as to entitle the Plaintiff to recover. Dalehite v. United States, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427; United States v. Inmon, 5 Cir., 205 F.2d 681; Rolon v. United States, D.C., 119 F.Supp. 432.

Assuming for the purpose of this opinion that the facts did require a finding that the Defendant was negligent, the Plaintiff has other hurdles to clear. Even if Defendant were negligent, such act of negligence, whether of omission or commission, must be shown to have been the proximate cause, or a contributing proximate cause of the accident before the Plaintiff could recover. The Court is of the opinion that no act of the Defendant was the proximate cause or a contributing proximate cause of the death of the deceased.

In the outset of this discussion, the Court finds that the deceased, Rickey Ed-

wards, was not guilty of any act of negligence. His actions in pushing the shell into the ground and in firing at the shell with the BB-gun were the ultimate cause of the accident, but such actions were not negligent. He had never seen the shell before, had no previous experience with military explosives, was only 12 years of age, and his knowledge along such lines had been limited to firing his BB-gun under adult supervision. The care and caution exercised by his parents makes this accident all the more tragic.

The same cannot be said for others in the chain of causation. Walter Redmond possessed sufficient knowledge to be chargeable with negligence. His general knowledge in the field of explosives and his knowledge of this particular shell subject him to a higher duty than that of a mere innocent child. He testified that he knew these shells were dangerous, but did not think they would kill. He and Jim Lawson both knew to remove the powder before playing with them. It will be noted that the other boys removed the powder before firing at the shells.

Section 105–204 of the Georgia Code provides that "due care in a child of tender years is such care as its capacity, mental and physical, fits it for exercising in the actual circumstances of the occasion and situation under investigation." Redmond's capacity was such as to hold him to a higher degree of care than that exercised by him here.

Redmond was negligent in keeping the shells and in passing them on to others who he knew were not as skilled in their use as he. His actions gave rise to the general interest in the shells and to Cochran's acquisition of the particular shell.

The conduct of Mr. W. H. Cochran, an adult, was clearly negligent and had an even more direct causal connection with the accident. Certainly, he owed the public a duty not to knowingly allow Mike to play with anything which might produce injury to others. Not only did he allow it but his implied permission overrode his wife's cautious instructions.

That he was not familiar with this particular type of shell cannot excuse his conduct. His very lack of knowledge should have urged caution. Clearly he must have surmised that the boys had been playing with the shells. To tacitly give a green light to such a practice is beyond comprehension. His wife, knowing nothing of explosives, had been afraid for Mike to play with it. Mr. Cochran, a former infantryman, allowed Mike to retain the shell—gave it back to him after examining it.

This was the last act of negligence and led almost directly to the fatal accident.

Now, do these acts of negligence on the part of Redmond and Mr. Cochran relieve the Defendant of liability, if the Defendant was negligent? This, of course, raises the involved questions of proximate cause and intervening causes. The rule in this connection in Georgia is clear. Its application is not so clear. All cases cited by counsel for both parties have been read and carefully considered. Each case must stand on its own bottom.

Clearly, if the original act of negligence triggered the subsequent acts or set them in motion, as in the "squib" case (Scott v. Shepherd, 2 Wm. Blackstone 892; 95 Eng.Rep. 1124), the intervening acts would not relieve the original actor. Such is not the case here.

The rule in Georgia is that, if the original actor reasonably could have foreseen the intervening acts and their consequences, then the intervening acts of negligence will not relieve the original actor from liability. Southern Railway Co. v. Webb, 116 Ga. 152, 42 S.E. 395, 59 L.R.A. 109.

The Court concludes that no agent or employee of the Defendant who may have been negligent could reasonably have foreseen the intervening acts of negligence of Redmond and/or Mr. Cochran, or apprehended their consequences.

To conclude that the actions of Redmond were reasonably foreseeable would require the further conclusion that it is

890

reasonable to assume that some other "souvenir hunter" had placed the shells where they were found by Redmond. If his conduct in collecting shells was so normal as to be reasonably foreseeable, then it cannot be said the Plaintiff has proved that the shells came to be on the right of way of the road through the negligence of some employee of the Defendant. One standard of reason must serve both purposes. To conclude that Redmond's actions were reasonably foreseeable is to admit that it is reasonable to assume that the shells were removed from the Reservation by souvenir hunters.

It is true that a number of children lived in this vicinity and the Defendant is charged with that knowledge. Redmond, however, was no mere average child when it came to explosives. Even if his conduct in collecting the shells was reasonably foreseeable, not so of his subsequent conduct. It is not reasonable to anticipate that one who is acquainted with military explosives and exhibits caution in playing with them himself should distribute them freely to younger and less informed children. Redmond's manner of handling these shells exhibits that he knew these shells should be handled with caution. The Court finds that his knowledge and capabilities were such as to impose upon him the duty of acting with greater care than he exercised here.

The act of Mr. Cochran in returning to his 11 year old son a shell, about which he knew nothing, with the remark that he thought it was not dangerous, was not only not reasonably foreseeable but remains incomprehensible, even with the aid of hindsight. This could have been the cut-off point which would have prevented a tragedy. His more cautious son had rightly sought the advice of his parents. The mother, properly fearsome of the unknown, cautioned her son at length concerning playing with this shell. The father, a former infantryman, had never seen such a shell before; yet, he returned it to his son with his tacit approval of its use as a plaything. With knowledge that the boys were playing with these shells, he put it back into circulation after his son had given it to him.

The Court is of the firm opinion that the negligence of the Defendant, if any there was, was too remote from the injury and that the intervening acts of negligence of Redmond and/or Mr. Cochran insulated the assumed negligence of the Defendant, so as to relieve the Defendant from liability.

The Plaintiff is entitled to take nothing from the Defendant. Let counsel for the Defendant prepare a judgment in accordance with this opinion.

It should be noted here that during the trial the Court reserved its ruling on several questions of evidence.

The Government tendered evidence relating to a roving patrol along the Old Macon Road. The officer who testified in this connection was not at Fort Benning at the time of the accident. His testimony as to the previous practice was hearsay and as to the present practice was immaterial. Plaintiff's objections are sustained.

■ The Government also tendered evidence as to the general knowledge and mental capacity of several of the young boys, particularly Walter Redmond. The Plaintiff objected, urging that their general knowledge and capacity was immaterial, and that knowledge of the particular shell involved was the controlling factor. The Court overrules this objection and concludes that this evidence was admissible. Sec. 105–204 of the Georgia Code provides:

"Due care in a child of tender years is such care as its capacity, mental and physical, fits it for exercising in the actual circumstances of the occasion and situation under investigation." The evidence here tendered has a direct bearing on the mental and physical capacity of these boys and the care to be exercised by them under the existing circumstances.

■ The Plaintiff tendered evidence of other shells having been found in

and around Columbus, Georgia since this accident. The Defendant objected to this evidence. The Court rules this evidence admissible and has given it such consideration as was thought merited.