Allen **WILLIAMS** b/n/f Louise J. Smyre,
Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 21825.

United States Court of Appeals
Fifth Circuit.

Oct. 5, 1965.

Vincent P. McCauley, Columbus, Ga., for appellant.

Sampson M. Culpepper, Asst. U. S. Atty., Floyd M. Buford, U. S. Atty., Macon, Ga., for appellee.

Before TUTTLE, Chief Judge, and PHILLIPS * and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

Allen Williams, a thirteen year old boy, thinking that he was lighting an ordinary firecracker, lit a United States Army "M–80 Firecracker". The M–80 Firecracker is an explosive device the Army uses in field exercises. Williams severely injured both hands. In this action he seeks damages under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680. The district court, sitting without a jury, denied recovery. We reverse and remand. We hold, under the doctrine of respondeat superior, that the injuries were caused by the negligence of an Army sergeant acting in line of duty.

### I.

The essential facts are not in dispute. "M–80 Firecracker" is a highly explosive device (compared with ordinary firecrackers) simulating the sound of hand and rifle grenades, mortar shells, land mines, and other exploding weapons. This "simulator", so-called, consists of a small paper cylinder filled with powder, and a fuse. Its appearance suggests an ordinary type of firecracker: the cylinder is colored red, and bears the designation "M–80 Firecracker". Three to seven seconds after the fuse is lit, the simulator explodes.

Company B of the Ninth Infantry, Second Division, used such simulators in exercises carried on at Fort Benning, Georgia, in late 1962 and early 1963. In accordance with standard company procedure the supply sergeant of Company

* Senior Judge of the Tenth Circuit, sitting by designation.

B issued a certain number of simulators to the platoon leaders, who distributed the M–80s to the men who were to use them. No count was kept of the number of simulators issued to, or used by, each soldier, but standard instructions were that after every exercise each man should turn back any unused simulators to the squad leader for return to the supply sergeant. Any simulator or ammunition overlooked by the end of the day was to be returned on discovery. After each exercise, the squad leader reminded the men to turn in all unused simulators and ammunition, but no soldier was searched without cause.

Sergeant James Smith was a section leader in Company B. After a field exercise held sometime in late 1962 or early 1963, Smith inadvertently kept one or more simulators in the pocket of his field jacket, and did not find out that he had done so until he got to his house, off the military base. Upon discovering the simulators, Smith put them in a cigar box in a bedroom dresser drawer, intending to take them back to the post the next day. Unfortunately for Allen Williams, Smith forgot all about the M–80s. In April 1963 Smith went overseas.

The simulators stayed in the cigar box until July 2, 1963. That day Allen Williams, while baby-sitting in Smith's house, saw the box in the dresser drawer and asked Mrs. Smith what was in it. She took the box out of the dresser, opened it, and gave Williams a simulator. He took it home, lit the fuse, and, holding it in both hands, walked toward the kitchen door, meaning to throw it outside. The simulator went off, severely injuring both his hands.

Louise J. Smyre, mother of Allen Williams, on behalf of her son, sued the United States in the District Court for the Middle District of Georgia. The court found that the Government had not been negligent in its use of simulators or in its supervision of Sergeant Smith, and that, in any event, the act of Mrs. Smith in giving the simulator to Williams was "the proximate cause" of the injury. On the basis of these findings, the court denied recovery.

II.

 Section 1346(b) of Title 28, U.S.C., gives the district court exclusive jurisdiction over claims against the United States for injuries caused by the negligence "of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred". Section 2671 recites that " 'Acting within the scope of his office or employment', in the case of a member of the military or naval forces of the United States, means acting in line of duty". The reference to members of the military forces "acting in line of duty" could suggest an intention to incorporate federal law.[1] The Supreme Court has held, however, that the determination whether a soldier was "acting in the line of duty" is to be determined by the applicable state rules of respondeat superior. Williams v. United States, 1955, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761. Accordingly, although the present action is a creature of federal statute, its substantive character is controlled by Georgia law.[2]

We do not cavil at the district court's holding that the army was not negligent in its use of M–80 firecrackers or in the supervision of Sergeant Smith. This holding is supported by proper findings that simulators are a useful aid to military training; that the army's handling and distribution of simulators at Fort Benning was reasonable in the circumstances; that Sergeant Smith's superiors had no reason to suspect he would take explosive materials off the post, had

[1] See Gottlieb, The Federal Tort Claims Act—A Statutory Interpretation, 35 Geo. L.J. 1, 12, n. 40 (1946); Gottlieb, State Law Versus A Federal Common Law of Torts, 7 Vand.L.Rev. 206, 218 (1954).

[2] Hinson v. United States, 5 Cir. (Ga.) 1958, 257 F.2d 178, 181.

given adequate instructions regarding the return of unexploded simulators, and had no duty to search every man in the outfit at the end of every exercise.

The Government's exposure, however, does not end with the holding that Sergeant Smith's superiors acted reasonably. The Government must also answer for the negligence of Smith himself. If, as a matter of Georgia law, Smith was (a) acting within the scope of his employment, and (b) negligent with regard to Williams, then Williams, absent any affirmative defense, is entitled to recover.

■ First, we conclude that Smith was acting in line of duty when he inadvertently carried off and failed to return the injury-causing simulator. In Georgia, as in most jurisdictions, the mere fact that a servant's negligent act is expressly forbidden by the master does not absolve the master of vicarious liability. The test is whether the servant's negligent act is within the class of acts that the servant is authorized to perform. "If the act is within the class, the master is bound, although the servant is forbidden to perform the particular act." Evans v. Caldwell, 1936, 52 Ga.App. 475, 184 S.E. 440, aff'd. 184 Ga. 203, 204, 190 S.E. 582.[3] Another formulation of the test applied by Georgia courts is that a master will be liable for injury to third persons caused by a servant's negligent act done in furtherance of the master's business—that is, while the servant is engaged in serving the master. Georgia Power Company v. Shipp, 1943, 195 Ga. 446, 24 S.E.2d 764, 766–769.[4]

■ In our view, Smith's failure to return the injury-causing simulator constituted negligent performance of an authorized act done in furtherance of Government business. The Government's position—that because the specific acts of taking the simulators home and leaving them in a dresser drawer were unauthorized, indeed forbidden, Smith "stepped aside from his employment", and the United States is therefore not liable—is a misapplication of the Georgia test. Smith was not on a frolic of his own, prohibited or allowed, when he performed the allegedly negligent acts; his departure from the prescribed course was itself negligence. If Smith's superior officers had authorized his negligent act, the doctrine of respondeat superior would have been irrelevant. In short, since the Government authorized Smith to handle simulators in line of duty, the Government must answer for his careless mishandling of them.

■ The defendant, in its brief, quotes from several federal court decisions holding misconduct by military personnel to be out of the line of duty. In Voytas v. United States, 7 Cir. 1958, 256 F.2d 786, a soldier stole explosives from a military base in Virginia and, while on leave in Chicago, gave them to a civilian who detonated them, causing injury. In Gordon v. United States, Ct.Cl. 1960, 180 F.Supp. 591, a soldier stole grenades from a base in North Carolina, and exploded them in a New York bar while on leave. In King v. United States, 5 Cir. 1959, 178 F.2d 320, an army air force cadet who became drunk while off his post returned, took off in an airplane without permission, and crashed into the plaintiff's house. In each of these cases, (a) there was a willful or wanton, rather than a merely negligent, deviation from the authorized course of employment; and (b) importantly, the employee performed the injurious act while on a frolic of his own, and not while engaged in serving his master. Each of these factors dilutes a master's responsibility for his servant's wrongful acts. In the one Georgia case cited by the Government, Parry v. Davison-Paxon Co., 1952, 87 Ga.App. 51, 73 S.E.2d 59, two truck drivers, on an errand for the defendant employer, stopped en ·

---

3. Accord: Southern Airways Company v. Sears Roebuck & Company, 1962, 106 Ga.App. 615, 127 S.E.2d 708; Porter v. Jack's Cookie Company, 1962, 106 Ga. App. 497, 127 S.E.2d 313.

4. Accord: Corum v. Edwards-Warren Tire Co., 1964, 110 Ga.App. 33, 137 S.E.2d 738, 739; Davidson v. Harris, 1949, 79 Ga.App. 788, 54 S.E.2d 290, 293–295.

route and broke into the plaintiff's house, apparently intending to commit a robbery. Again, the elements of willful misconduct and, especially, detour from the course of employment distinguish that case from the case before the Court.

### III.

■■ Did Smith, in taking the simulators off the post and leaving them in a drawer, breach a duty of care owed Williams? The Georgia rule is that a person dealing with a dangerous instrumentality is bound to exercise only ordinary care. But what constitutes ordinary care "varies with the instrumentality dealt with; where it is inherently dangerous, more care is necessary in regard to it than where it is, according to common experience, a thing relatively harmless even when * * * negligently used". Hand v. Harrison, 1959, 99 Ga.App. 429, 108 S.E.2d 814, 816.[5] In Georgia law foreseeability is talismanic.[6]

■ Applying the Georgia standard, we conclude as a matter of law that Smith should have anticipated that Williams, or someone else likely to be hurt, would get possession of the simulators. Smith knew simulators were dangerous; he knew the rule against taking them off the base. He should have realized that an obvious purpose for the rule was to keep dangerous instrumentalities out of the civilian community. He should have foreseen that children might have access to the cigar box where he put the simulators—Smith had five children of his own; the box was left in a drawer containing diapers. The evidence demands a finding that Smith failed to meet the requisite standard of care.

### IV.

Despite Smith's negligence, there remain two obstacles to the plaintiff's recovery.

First, the district court found that, regardless of any negligence attributable to the Government, Mrs. Smith's giving Williams the simulator was a supervening cause of the injury, and snapped the chain of causation. We disagree.

■ Again, foreseeability is the Georgia standard. The negligent act of a third party will not cut off the liability of an original wrong-doer if the intervening act is foreseeable.[7] The district court's finding that it was not foreseeable "a mature woman would be so thoughtless as to deliberately place one of these explosives in the hands of a thirteen year old child" is without support in the record. Mrs. Smith, in Germany at the time of the trial, did not testify; nor did the Government offer her deposition. There was no evidence that Mrs. Smith was familiar with simulators. There was no showing as to her age, education, or knowledge of firearms and explosives. The simulators were labeled merely "M–80 Firecracker"; they bore no marking that would have warned a person without special knowledge that they were not ordinary firecrackers. We mention these facts not as evidence that Mrs. Smith was not negligent—her negligence would not absolve the Government anyway—but to suggest that it was foreseeable in law that Mrs. Smith would fail to recognize the simulators' dangerous potential, and fail to take due care.

The cases dealing with proximate cause cited by the Government are distinguish-

---

5. Accord: City of Sylvania v. Neesmith, 1958, 97 Ga.App. 758, 104 S.E.2d 522, 524; Darden v. City of Washington, 1926, 35 Ga.App. 777, 134 S.E.2d 813, 814.

6. Davis v. Aiken, 1965, 111 Ga.App. 505, 142 S.E.2d 112, 116; Shepherd v. Whigham, 1965, 111 Ga.App. 274, 141 S.E. 2d 583, 586; Poole v. City of Louisville, 1963, 107 Ga.App. 305, 130 S.E.2d 157, 160; Thomas v. Williams, 1962, 105 Ga. App. 321, 124 S.E.2d 409, 413.

7. Atlantic Coastline Railroad Co. v. Godard, 1955, 211 Ga. 373, 86 S.E.2d 311, 315; Williams v. Grier, 1943, 196 Ga. 327, 26 S.E.2d 698, 704–705; Southern Railway Company v. Webb, 116 Ga. 152, 42 S.E. 395, 396–398, 59 L.R.A. 109; Medlin v. Bickford, 1962, 106 Ga.App. 859, 128 S.E.2d 531, 533; Atlanta Baggage & Cab Company v. Atlanta Taxicabs, Inc., 1961, 104 Ga.App. 89, 121 S.E.2d 175, 178; Anderson-McGriff Co. v. Meisel, 1951, 85 Ga.App. 58, 68 S.E.2d 377, 384.

able. In Edwards v. United States, M.D. Ga. 1948, 164 F.Supp. 885, the acts held to be a supervening cause of injury were the theft and careless disposition of a 30-calibre blank shell from Fort Benning by a thirteen-year-old boy whom the court described as "well versed in the general subject of military explosives and military equipment" (164 F.Supp. at 887) and who "testified that he knew these shells were dangerous, but did not think they would kill" (164 F.Supp. at 889). Each of the other two cases cited by the Government, neither of which arose in Georgia, also involved explosives—a bazooka shell and a clearly marked rocket fuze—stolen by intermediaries who had good reason to anticipate serious harm. The distinguishing elements in all three of these cases are the wrongful taking and the knowledge of potential danger attributable to the intervening third person.

The second possible obstacle to recovery is contributory negligence. The Government raised this defense in its answer, but the court, because it found no negligence, did not reach the issue. Section 105–204 of the Georgia Code imposes on a child of "tender years" the duty to exercise "such care as its capacity, mental and physical, fits it for exercising in the actual circumstances of the occasion and situation under investigation". Georgia courts have consistently held that the question whether a child under fourteen is capable of negligence "except in plain and unmistakable cases is a question for determination by the jury". Rogers v. McKinley, 1954, 48 Ga. App. 262, 172 S.E. 662, 665.[8]

To show Williams's mental capacity, the Government points out that he changed the Smith baby's diaper. In addition, the Government argues that Williams was able to read the words "M–80 Firecracker" on the simulator and that he must have known the simulator would explode, since he meant to throw it out the door. The plaintiff, on the other hand, contends that under the subjective standard of the Georgia statute Williams was not contributorily negligent; he knew nothing about explosives, had never seen a simulator before, and had, in fact never even set off a firecracker.

We attach no importance to diaper-changing as a test for determining capability of negligence. We cannot say however that, as to contributory negligence, the facts present a "plain and unmistakable" case one way or the other. In the circumstances, we have concluded to remand the case to the district court, the trier of fact, for a finding on the issue of contributory negligence. If the court should find no contributory negligence, it will then make findings as to quantum and render judgment for the plaintiff.

\* \* \*

The judgment of the district court is reversed, and the case is remanded for action consistent with this opinion.

---

8. See also Southern Railway Co. v. Chatman, 1906, 124 Ga. 1026, 53 S.E. 692, 697–698, 6 L.R.A.,N.S., 283; Brewer v. Gittings, 1960, 102 Ga.App. 367, 116 S.E. 2d 500, 505–506; Davidson v. Horne, 1952, 86 Ga.App. 220, 71 S.E.2d 464, 470; Simmons v. Atlanta & West Point Railroad Company, 1932, 46 Ga.App. 93, 166 S.E. 666, 667.