Allen **WILLIAMS** b/n/f Louise J. Smyre, Appellant,

v.

**UNITED STATES of America,** Appellee.

No. 23228.

United States Court of Appeals Fifth Circuit.

June 29, 1967.

---

Vincent P. McCauley, Columbus, Ga., for appellant.

Sampson M. Culpepper, Asst. U. S. Atty., Floyd M. Buford, U. S. Atty., for appellee.

Before TUTTLE, Chief Judge, and BROWN and GODBOLD, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

We deal once again with this case. As before, it comes to us after a denial of any recovery against the Government in an FTCA suit to recover for serious injuries sustained by a young 13-year-old boy when a highly dangerous piece of army ordnance exploded in his hands. Last time we reversed the finding of no negligence on the part of the Government but remanded the case for determination of the question of contributory-comparative negligence since there had been no need for, and no decision on, this question by the trial Court in its first disposition. Williams v. United States, 5 Cir., 1965, 352 F.2d 477.

As our prior opinion discusses the facts in great detail, they need be summarized only briefly here to put our problem in perspective.

The accident occurred at the home of Allen Williams (the injured boy) a few miles from Fort Benning, Georgia. In the course of training operations, various types of ordnance are issued to pla-

toon or section leaders for distribution to the men for use by them in military exercises. Among the items so issued were explosive devices described as "M–80s" which are similar in appearance to large "firecrackers." These are small, red, paper cylinders filled with powder and a fuse with the marking "M–80 Firecracker" on the cylinder. Their function is that of a "simulator" for the sound of hand and rifle grenades, mortar shells, land mines, and other exploding weapons to give realism to combat field exercises. Although it looks much like an ordinary firecracker, the M–80 is more powerful and is designed to explode three to seven seconds after the fuse is lit.

Following one of these training exercises, Sergeant Smith, a section leader in Company B, inadvertently carried a few of the M–80s to his home, situated only a few miles from Fort Benning. Under the existing established policy of Fort Benning, Sergeant Smith, on discovering the simulators on his person, should have returned them immediately to the Base. This he did not do. Rather, he did what he thought was the second-best thing. He put the M–80s away in what he considered to be a safe place with the intention of returning them the next day. Unfortunately for Allen Williams, this, as is often the case when a lesser desirable course is chosen, was not sufficient. For safekeeping, Sergeant Smith put the M–80s in a cigar box and deposited the box in a dresser drawer. Sergeant Smith forgot about them and never returned them to the Base. They remained in the box unnoticed until Allen Williams happened on to them that fateful day and was handed one by Mrs. Smith.

Allen, then a young 13-year-old boy, had been asked to baby-sit for Mrs. Smith. He agreed and went to her home to secure some diapers. As Mrs. Smith was taking the diapers from out of the chest of drawers, Allen noticed the cigar box and asked Mrs. Smith what was in it. She opened it and handed him one of the M–80s. They then returned with the young baby to Allen's home where he was to do his baby-sitting. Later that afternoon Allen lit the fuse. It detonated the M–80 causing severe injuries to both of his hands.

On the trial of the FTCA suit, the District Court, sitting of course without a jury as that Act requires, denied recovery. We reversed, 352 F.2d 477, finding the Government vicariously liable for the actions of Sergeant Smith in line of duty in taking the M–80s to his home, failing to return them to the Base upon discovery, and leaving them in a drawer. We expressly held that considering the nature of this highly explosive device, Sergeant Smith breached the Georgia duty of care required in the handling of a "dangerous instrumentality" since "Smith knew the simulators were dangerous." We likewise rejected out of hand the trial Court's denial of liability on the alternative ground that the injury was due to the intervening act of Mrs. Smith in giving the M–80 to Allen. In view of our earlier holding of the imputable negligence of Sergeant Smith, we declared that the action of Mrs. Smith, whether deemed to be negligence or not, was immaterial since "it was foreseeable in law that Mrs. Smith would fail to recognize the simulators' dangerous potential". 352 F.2d 477, 481. These holdings, we recognized, would call for allowance of damages. But since the issue of contributory-comparative negligence had been unessential to the trial Court's disposition, this led us to further hold that in " * * * the circumstances, we have concluded to remand the case to the district court, the trier of fact, for a finding on the issue of contributory negligence. * * *." 352 F.2d 477, 482.

On remand, the trial Court found that Allen " * * * did not exercise the degree of care imposed upon him by Georgia law and * * * was, therefore, negligent * * * [and] * * * his negligence contributed to his injury and * * * was equal to any negligence attributable to the [Government] * * *." Consequently, the Court con-

cluded, "No recovery is authorized under the Georgia rule of comparative negligence." In the order-opinion, the Judge elaborated somewhat upon the factors leading to that conclusion.[1]

On this appeal from the adverse judgment, Allen attacks this contributory negligence holding on two grounds: (1) The issue is not properly in the case and (2) the finding is clearly erroneous. We regard the first as inconsequential because, no matter how little stressed prior to our first remand, the issue of contributory-comparative negligence was raised by the pleadings and evidence, Wells v. Steinek, 1934, 49 Ga.App. 482, 176 S.E. 42; Bently v. Ayers, 1960, 102 Ga.App. 733, 117 S.E.2d 633. And our remand recognized as much. As to the second, the Government, in a somewhat like manner, urging that the question whether a child under fourteen is capable of negligence "except in plain and unmistakable cases is a question for determination by the jury", Rogers v. McKinley, 1954, 48 Ga.App.

262, 172 S.E. 662, 665, so it is for the fact finder, ordinarily a jury, alone to decide the issue of comparative negligence,[2] this Court cannot disrupt the findings of the trial Court. On this, affirmance would be called for without more. But this does not foreclose inquiry or the travail of decision, for even though the findings come here with the buckler and shield of F.R.Civ.P. 52(a),[3] we must determine whether they pass muster under the clearly erroneous concept.[4] We find they do not.

We start, as we must, with the Georgia standard of conduct demanded of a plaintiff, both generally [5] and that of a young child.[6] The first is the source of the Georgia contributory-comparative negligence concept under which a negligent plaintiff may recover unless his negligence is equal to (or greater than) that of the defendant, although damages will be reduced in proportion to the amount of negligence attributable to the plaintiff.[7]

---

1. "Allen Williams, the injured boy, was thirteen years of age at the time this incident occurred and had completed the sixth grade in school. He was active in sports such as baseball, performed chores around the home, and on occasion cared for the young children of others in the neighborhood as a 'babysitter', for which he received compensation. The Court observed him to be alert and intelligent. Although he had never before seen an explosive of this type he saw and read the designation 'M-80 Firecracker' on the object and he knew that it was an explosive. That is the reason he wanted it. He knew how to light it and he lit it. He knew that it would explode if be lit it because when he lit it he ran to the kitchen door to throw it outside so it would not explode in the house. He simply failed to throw it out before it exploded in his hand."

2. Dawson Motor Co. v. Pety, 1936, 53 Ga. App. 746, 186 S.E. 877; The Central R.R. & Banking Co. v. Galden, 1893, 93 Ga. 510, 21 S.E. 68; Wynn v. City & Suburban R.R. of Savannah, 1893, 91 Ga. 344, 17 S.E. 649.

3. Henderson v. United States, 5 Cir., 1964, 328 F.2d 502, 503; Black v. Greyhound

Corp., 5 Cir., 1963, 314 F.2d 485; Stephens v. Osaka Mercantile Steamship Co., 5 Cir., 1964, 328 F.2d 604.

4. See Galena Oaks Corp. v. Scoffield, 5 Cir., 1954, 218 F.2d 217 at 219; Oil Screw Noah's Ark v. Bentley & Felton Corp., 5 Cir., 1963, 322 F.2d 3, 5–6; W.R.B. Corp. v. Geer, 5 Cir., 1963, 313 F.2d 750, 753; Gounares Bros. v. United States, 5 Cir., 1961, 292 F.2d 79, 81; Bishop v. United States, 5 Cir., 1959, 266 F.2d 657, 666.

5. Georgia Code § 105–603: "If the plaintiff by ordinary care could have avoided the consequences to himself caused by the defendant's negligence, he is not entitled to recover. In other cases the defendant is not relieved, although the plaintiff may in some way have contributed to the injury sustained."

6. Georgia Code § 105–204: "Due care in a child of tender years is such care as its capacity, mental and physical, fits it for exercising in the actual circumstances of the occasion and situation under investigation."

7. See Smith v. American Oil Co., 1948, 77 Ga.App. 463, 49 S.E.2d 90; Pollard v. Heard, 1936, 53 Ga.App. 623, 186 S.E.

The decisive factor as we analyze the case is not the general mental alertness of this young boy, his capacity to perform chores, to serve as a diaper-changing[8] babysitter for compensation, his general knowledge or, for that matter, his general awareness that there were such things as firecrackers (see note 1, supra). Rather, it is whether this record supports in any degree the implied conclusion that Allen either knew or could be charged as a matter of law with knowledge of the extraordinary dangers of this piece of military high explosive.

■ We start from the proposition that the Georgia Code (see note 6, supra) speaks in terms of the particular youthful plaintiff in the particularized circumstances of the occasion giving rise to the claim. Ragan v. Goddard, 1931, 43 Ga.App. 599, 159 S.E. 743; Braswell v. Smith, 1921, 27 Ga.App. 430, 110 S.E. 415. The child, unlike his adult counterpart, does not undergo the metamorphosis into the fictionalized character of the ordinary prudent youth. The Georgia cases, bearing this out, emphasize that for a child to be negligent, he must be shown to have an appreciation of the risk involved. For this a general showing that the child was aware of the factual situation is not sufficient. It must be shown that the child was aware of and appreciated the danger of the situation.[9] Thus, in Laseter v. Clark, 1936, 54 Ga.App. 669, 189 S.E. 265, the Court emphasized that the lack of driving experience of a 16-year-old boy tended to show that he would not appreciate the risk involved in an otherwise admittedly dangerous situation. In Beck v. Wade, 1959, 100 Ga.App. 79, 110 S.E. 2d 43, the Court specifically pointed out that "[t]here is a difference between mere knowledge of a defect and a full

appreciation of the risk involved." Closer home is Allen v. Gornto, 1959, 100 Ga. App. 744, 112 S.E.2d 368, where, against the attack that the petition on its face showed that the plaintiff was guilty of contributory negligence, the Court emphasized the requirement that there be an awareness of potential hazards, not just mere knowledge of the operation being undertaken. Recognizing that the " * * * act of the plaintiff in exploding the powder when contained in a glass bottle might be very rash," the Court readily found factors making such conduct excusable. These included the fact that the plaintiff " * * * was an immature youth fifteen years of age, was inexperienced in the use and handling of fireworks * * * and other explosives * * * [and] did not understand and know the suddenness with which such fireworks might explode * * *." Further, it went on, the "use of the bottle as a container for the powder might not have been perilous had the fuse burned as slowly as the inexperienced boy expected * * *." 112 S.E.2d at 372. See also Paulk & Fossil v. Lee, 1924, 31 Ga.App. 629, 121 S.E. 845.

Offsetting these cases, of course, are those in which the Court either holds or sustains a finding of contributory negligence where the risks are patently obvious to the particular youthful plaintiff. Lanier v. O'Bear, 1960, 101 Ga. App. 667, 115 S.E.2d 110; Campbell v. Southern Ry. Co., N.D.Ga., 1961, 198 F. Supp. 661, 664, affirmed, 5 Cir., 1962, 309 F.2d 569.

■ Under these standards neither the evidence nor the Court's finding (note 1, supra) add up to the requisite awareness of the extraordinary hazards of this military explosive. That Allen

---

894; Sanders v. Sisk, 1942, 68 Ga.App. 572, 23 S.E.2d 503; Atlantic Greyhound Corp. v. Loudermilk, 5 Cir., 1940, 110 F.2d 596.

8. In our earlier opinion, we stated that "[w]e attach no importance to diaper-changing as a test for determining capability of negligence." 352 F.2d 477, 482.

9. We assume that even for a child appreciation of the danger may be either actual or constructive in the sense that the facts are such that the child "should have been aware" of them. Here the record warrants neither finding.

knew of firecrackers is not enough for many reasons. Not the least of these is the uncontradicted fact that he had never fired or handled one, apparently for the very good reason that his mother didn't permit it. All we have on this score then is his acknowledged consciousness that firecrackers exist, and that he thought this was a firecracker. Just what he knew about firecrackers generally is not even shown. And although the Judge's power to use common experience is perhaps sufficiently broad to allow him to conclude that a young boy knows the function of a firecracker is to explode with a noise, there was no further proof from which to infer that, with such knowledge, this young boy knew that this M–80 would explode as fast as it did with the violence it did. Indeed, the fact that the particular M–80 bore the legend of "firecracker" is here significant. For despite this notice, this Court nevertheless held virtually as a matter of law that it was the extraordinary dangers of this piece of military ordnance which constituted a breach of due care by Sergeant Smith. Underlying that was the fact that Sergeant Smith had to anticipate in fact that unless returned to the Army Base, the device might fall into the hands of people who would not know of these hazards. Moreover, even though it was marked as a firecracker, this Court rejected the claim of new and intervening cause from Mrs. Smith's giving the M–80 to Allen since to the Government "it was foreseeable in law that Mrs. Smith would fail to recognize the simulators' dangerous potential * * *." 352 F.2d 481. And, of course, the Army's own policy requiring the immediate return of such ordnance pieces is a powerful, if not conclusive, evidential factor revealing that in the minds of acknowledged experts, there were hazards to the militarily uninitiated were these explosives to fall into the hands of the uninformed. Cf. Ove Skou v. Hebert, 5 Cir., 1966, 365 F.2d 341, 347–48.

When the very basis for the affirmative holding of imputed negligence is the extraordinary danger in the M–80 of which persons would or might likely not have knowledge, it takes more than is here revealed to sustain the implied finding that this victim of these dangers— and the precise beneficiary of the protection—either knew or had to know of the very hazards giving rise to the duty of extraordinary care. In other words, the holding below dissolves our earlier reversal. A young boy is charged with having the obligation to know the very thing which gave rise to the affirmative duty of the Government—the peculiar dangerous potentialities of a device which looked like a firecracker, but unfortunately was something more.

That he thought it was a firecracker and hence "knew how to light it" which he did or that he "knew * * * it would explode if he lit it because when he lit it he ran to the kitchen door to throw it outside" (see note 1, supra) shows nothing more than his supposition that he was dealing with an ordinary firecracker. Since it was precisely this possibility with its devastating consequences which gave rise to our imposition of imputed liability on the Government, that is insufficient upon which factually to base the conclusion that he knew of the extraordinary hazards in fact. For like reasons it is inadequate upon which to base the conclusion that as the beneficiary of the court-imposed duty of due care, he had to know as much as a matter of law.

There is, therefore, no basis for concluding that Allen is chargeable with any legal fault resulting either in a bar of recovery or a proportional diminution of damages. The consequence is that the case must now go back for determination of full damages and the entry of a final judgment for an amount which, we can only hope, will either satisfy the parties or be bearable by them so that this case can come finally to an end. Cf. Bros Inc. v. W. E. Grace Mfg. Co., 5 Cir., 1965, 351 F.2d 208, 217, cert. denied, 1966, 383 U.S. 936, 86 S.Ct. 1065, 15 L.Ed.2d 852.

Reversed and remanded.