**Brady Nelson BLAZEK and Taylor Ernest Blazek, by their Conservator Deborah Ann BLAZEK, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

No.  Civ.  4–99–CV–30402.

United States District Court,
S.D. Iowa,
Central Division.

Jan. 17, 2001.

Patricia M. Hulting, Susan R. Stockdale, Roehrick Hulting Blumberg Kirlin & Krull PC, Des Moines, IA, for Plaintiffs.

Gary L. Hayward, Asst. U.S. Atty., United States Attorney, Des Moines, IA, for Defendant.

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

WALTERS, Chief United States Magistrate Judge.

This matter is before the Court on defendant's motion for summary judgment

(# 11). On July 16, 1999, plaintiffs Brady Nelson Blazek and Taylor Ernest Blazek, by their Conservator Deborah Ann Blazek, Richard Blazek and Deborah Ann Blazek, filed a complaint, making claims under the Federal Tort Claims Act, 28 U.S.C. § 2671, et seq., for personal injuries occurring to Brady and Taylor Blazek on February 24, 1996. The Court has jurisdiction pursuant to 28 U.S.C. § 1346(b).

The parties consented to proceed before a United States Magistrate Judge and the case was assigned to the undersigned on December 15, 1999. *See* 28 U.S.C. § 636(c). By ruling filed January 12, 2000, the individual claims of Richard Blazek and Deborah Ann Blazek were dismissed for failure to exhaust administrative remedies as required by 28 U.S.C. § 2675(a).

Defendant filed the present motion for summary judgment on September 8, 2000. Plaintiff has resisted. The motion is fully submitted following hearing.

## I.

The government's motion for summary judgment is subject to the following well-established standards. A party is entitled to summary judgment only when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Helm Financial Corp. v. MNVA Railroad, Inc.*, 212 F.3d 1076, 1080 (8th Cir.2000) (citing Fed.R.Civ.P. 56(c)); *accord Bailey v. USPS*, 208 F.3d 652, 654 (8th Cir.2000). An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A genuine issue of fact is material if it

"might affect the outcome of the suit under governing law." *Hartnagel*, 953 F.2d at 395 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)); *see Rouse v. Benson*, 193 F.3d 936, 939 (8th Cir.1999).

In assessing a motion for summary judgment a court must determine whether a fair-minded jury could reasonably return a verdict for the nonmoving party based on the evidence presented. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Herring v. Canada Life Assurance Co.*, 207 F.3d 1026, 1030 (8th Cir.2000). The court must view the facts in the light most favorable to the nonmoving party, and give that party the benefit of all reasonable inferences which can be drawn from them. *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348; *accord Lambert v. City of Dumas*, 187 F.3d 931, 934 (8th Cir.1999); *Kopp v. Samaritan Health System, Inc.*, 13 F.3d 264, 269 (8th Cir.1993). The court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue meriting a trial. *Gremmels v. Tandy Corp.*, 120 F.3d 103, 105 (8th Cir.1997) (citing *Grossman v. Dillard Dep't Stores, Inc.*, 47 F.3d 969, 971 (8th Cir.1995)); *Johnson v. Enron Corp.*, 906 F.2d 1234, 1237 (8th Cir.1990). A conflict in the evidence ordinarily indicates a question of fact to be resolved by the jury. *Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 9 (2d Cir.1983).

## II.

Many of the facts are undisputed though the inferences and legal conclusions to be drawn from them are argued by the parties. What follows is a factual summary viewed favorably to plaintiffs.

Plaintiffs Brady Nelson Blazek and Taylor Ernest Blazek are the sons of Richard and Deborah Ann Blazek of Corning, Iowa.

Deborah Blazek is their court-appointed conservator.

On or about December 17, 1995, an auction was held in Corning, Adams County, Iowa, to dispose of personal property belonging to Ruth Carden and her son, Larry Carden, both deceased. Prior to his death, Larry Carden had lived with his mother.

Larry Carden had served with the United States Army from July of 1964 until March 20, 1978 when he retired from active service for medical disability reasons as a Sergeant. (Pl.Exs. 1 and 3). He served in Vietnam on three tours of duty during his service and received several service awards. (Pl.Ex.1). His last posting before retirement was as an instructor/Ammo NCO at Fort Leonard Wood, Missouri. (Pl.Exs. 5 and 6). In this capacity, Carden's duties included "maintain[ing] training site as required. Assist[ing] unit by issueing [sic] ammunition ... turns in excess ammunition." (Pl. Ex.6).

The auction was run by Kretzinger's Auction. One of the items sold at the estate auction was a box[1] containing, among other items, an M57 firing device and detonators or blasting caps. The government agrees for purposes of the motion for summary judgment that the firing device and detonators were of a kind used by the United States Army, although it denies there is any evidence these particular devices were in the Army inventory or that Carden acquired them while in the Army. There is no evidence Larry Carden was authorized by the Army to have these items in his personal possession off-base. The record includes undated Standard Operating Procedures for Fort Leonard Wood concerning ammunition and explo-

sives. A stated purpose of the procedures was

> To better manage the accountability of ammunition/explosives (A & E) and to significantly reduce the probability of misappropriation and "thefts of opportunity", while increasing the safety aspects in controlling ammunition/explosives used on Fort Leonard Wood.

(Ex. 7 at 5–1). The document details extensive procedures for the issuance and turn-in of ammunition and explosives.

Prior to the auction, the auctioneer's son Danny Kretzinger was informed there was a firing device in the box and removed it prior to the sale to avoid frightening or confusing potential purchasers. (Def.Ex. B, 'Answer to Interrogatory No. 9 and Request for Admission No. 1). Garland Walter, d/b/a G.G. Walter, Used Furniture and Antiques, purchased the box of items at the auction.

On or about February 24, 1996, Richard Blazek, father of Brady and Taylor, purchased the box of items containing the firing device and detonators from Walter after examining the contents and working with them. (Def.Ex. A at 18–20). Brady and Taylor had accompanied their father to Walter's business and were present when Richard purchased the box. On the ride back to the Blazek residence, Brady Blazek, unaware of the dangerous nature of the firing device and detonators, placed the two wires of one of the detonators into the coupling on the firing device, squeezed the trigger of the firing device and detonated the detonator. Brady lost his right hand and sustained injury to his right leg as a result of the explosion. Taylor sustained injuries to his face. (Complaint ¶ 16; Def.Ex. C at 42–44).

---

1. For purposes of the summary judgment motion, the Court assumes the box referenced by the parties is a foot locker described as an "Army item[ ]" in the notice of the auction. (Pl.Ex.2), and that the box and items in it originally belonged to Larry Carden.

Plaintiffs filed suit in Iowa state court, naming as defendants Jack Kretzinger, d/b/a Kretzinger's Auction, Garland Walter d/b/a G.G. Walter, Used Furniture and Antiques, and Richard Blazek. (Def.Ex. C). They dismissed their claims against Richard Blazek and reached a settlement with Walter. (Def.Exs. D, E, F and G). Their claims against Kretzinger went to a state court jury, which returned a defense verdict in favor of Kretzinger. (Def.Ex.H).

An administrative claim in the names of "Brady Nelson Blazek and Taylor Ernest Blazek by their Conservator Deborah Ann Blazek" was filed on August 13, 1997. The claim was denied by the Department of the Army on February 19, 1999. This lawsuit was filed July 16, 1999, naming the United States as defendant.[2]

### III.

In their briefs, the parties agree the law of Iowa controls the elements of liability and that neither strict liability nor *res ipsa loquitur* apply. Defendant's motion challenges plaintiffs' ability to prove scope of employment, breach of duty and proximate cause. Because of the Court's findings with respect to scope of employment, the latter two issues will not be addressed herein.

Plaintiffs' claims arise under 28 U.S.C. § 1346(b) which provides

... the district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages .. for injury ... or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

Under the statute, plaintiffs have the burden of proving (1) injury caused by (2) negligent or wrongful act or omission (3) of a government employee (4) acting within the scope of his employment (5) under circumstances where a private person would be held liable under the law of the state in which the incident occurred. *Peak,* 660 F.2d at 377 n. 5; *United States v. Inmon,* 205 F.2d 681, 684 (5th Cir.1953). In the case of members of the armed forces, acting within the scope of employment means "acting in line of duty." 28 U.S.C. § 2671; *see Walsh v. United States,* 31 F.3d 696, 699 (8th Cir.1994). "Line of duty" is also determined with reference to applicable state rules of respondeat superior. *Williams v. United States,* 352 F.2d 477, 479 (5th Cir.1965) (citing *Williams v. United States,* 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955)).

Under Iowa law, an employer may be responsible for injury to third persons arising from the servant's negligent act if the servant's conduct is within the scope of his employment, even if the conduct is expressly forbidden or contrary to instructions. *Vlotho v. Hardin Co.,* 509 N.W.2d 350, 354 (Iowa 1993). "[F]or an act to be within the scope of employment the conduct complained of 'must be of the same general nature as that authorized or incidental to the conduct authorized.'" *Godar v. Edwards,* 588 N.W.2d 701, 705

---

**2.** Plaintiffs' resistance to the motion for summary judgment references the Department of the Army in its caption. As defendant notes, 28 U.S.C. § 2679(a) precludes FTCA suits against agencies, making the United States the only proper party defendant. *See FDIC v. Meyer,* 510 U.S. 471, 476, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994); *Peak v. Small Bus. Admin.,* 660 F.2d 375, 378–79 (8th Cir.1981).

(Iowa 1999). (quoting *Sandman v. Hagan*, 261 Iowa 560, 567, 154 N.W.2d 113, 117 (1967)). Many factors guide consideration of whether an act is "within the scope of employment" including

(a) whether or not the act is one commonly done by such servants;

(b) the time, place and purpose of the act;

(c) the previous relations between the master and the servant;

(d) the extent to which the business of the master is apportioned between different servants;

(e) whether or not the act is outside the enterprise of the master or, if within the enterprise, has not been entrusted to any servant;

(f) whether or not the master has reason to expect that such an act will be done;

(g) the similarity in quality of the act done to the act authorized;

(h) whether or not the instrumentality by which the harm is done has been furnished by the master to the servant;

(i) the extent of departure from the normal method of accomplishing an authorized result and

(j) whether or not the act is seriously criminal.

*Godar*, 588 N.W.2d at 706 (quoting Restatement (Second) of Agency § 229(2)). To relieve the employer of liability, there must be "a deviation from the employer's business or interest to pursue the employee's own business or interest" which is "*substantial in nature.*" *Sandman*, 261 Iowa at 568, 154 N.W.2d at 118 (quoted in *Godar*, 588 N.W.2d at 706) (emphasis original). "Although the question of whether an act is within the scope of employment is ordinarily a jury question, depending on the surrounding facts and circumstances, the question as to whether the act which departs markedly from the employer's business is still within the scope of employment may well be for the court." *Sandman*, 261 Iowa at 569, 154 N.W.2d at 118.

██ Defendant argues that there are insufficient facts in the summary judgment record upon which even to apply these principles, since Carden is long deceased. There is no evidence as to when he acquired the items, where (as defendants point out, he could have acquired them during his overseas tour), how he acquired them, what his intent was in acquiring them, or even that he knew he had them in his possession. Plaintiffs rely on *Williams v. United States, supra,* in support of their theory that since Carden would have been authorized to utilize the items as Ammo NCO at Fort Leonard Wood, his subsequent possession of them in "departure from the prescribed course" was "an authorized act done in furtherance of Government business." *Id.* 352 F.2d at 480.[3] Defendant distinguishes *Williams*, pointing out that the serviceman whose possession of ordnance caused injury was alive and could provide testimony as to how the item came to be in his possession.

In *Williams*, an army section leader, Sgt. James Smith, inadvertently retained some M–80 simulators (a highly explosive device resembling ordinary firecrackers) in his field jacket following a field exercise. He did not discover the simulators until he was at home off-base. He placed them in a cigar box in a dresser drawer, intending to take them back the next day, but forgot. Shortly thereafter Smith was posted overseas. The simulators remained in the box in the drawer until they were discovered a few months later by a babysitter. Mrs.

---

3. Plaintiffs do not contend government employees were negligent in the control or use of the explosive devices apart from the conduct of Carden.

Smith gave one of the simulators to the babysitter, who took it home and lit it. The subsequent explosion caused severe injury to both of the sitter's hands. 352 F.2d at 479.

In concluding that Smith was acting within the scope of employment through his inadvertent possession of the simulators such that the government should be held responsible for his acts, the Fifth Circuit Court of Appeals noted that "Smith was not on a frolic of his own, prohibited or allowed, when he performed the allegedly negligent acts." *Id.* at 480. Reviewing case law holding military misconduct to be out of the line of duty, the court noted that in each case, the circumstances indicated a

> willful or wanton, rather than a merely negligent, deviation from the authorized course of employment; and ... importantly, the employee performed the injurious act while on a frolic of his own, and not while engaged in serving his master. Each of these factors dilutes a master's responsibility for his servant's acts.

*Id.* In such cases, courts have not held the government liable. *See Garza v. United States,* 809 F.2d 1170, 1171–75 (5th Cir. 1987) (surreptitious taking of detonator from military base by soldier not in the line of duty); *Voytas v. United States,* 256 F.2d 786, 789 (7th Cir.1958) (ammo guard's theft of explosive not within line of duty); *King v. United States,* 178 F.2d 320, 322 (5th Cir.1949) (government not liable for airplane crash caused by cadet who took government plane after returning from off-base drinking—"Cadet White was on a frolic of his own, and was not in any manner serving the interests of the United States"); *Gordon v. United States,* 148 Ct.Cl. 31, 180 F.Supp. 591, 595 (1960) (government not responsible for action of supply sergeant in stealing grenades and exploding them off-base while on leave). In

each case, there was sufficient evidence as to the surrounding circumstances to permit the court to make a finding regarding the scope of employment/line of duty issue.

There is no question that Army ordnance should not come into the hands of children, as this case demonstrates. The Court agrees that *Williams* is persuasive authority in this case. The principles on which it was decided are fully consistent with Iowa law on the subject of scope of employment. The Court also agrees with plaintiffs that the nature of the devices and Larry Carden's last duties while in the Army is circumstantial evidence which supports an inference that he obtained the devices while he was in the Army. This alone, however, is not sufficient. There must be evidence from which the Court could conclude the devices came into Carden's personal possession not merely while he was in the Army's employment, but in the scope of employment. If Carden's possession was the result of a "frolic" or "willful misconduct," for example if he intentionally took the devices without authorization as a souvenir of his service or for his personal use, *Williams* and the other cases above would support a finding that his acts were *not* in the scope of employment. If, on the other hand, Carden's possession came about as a result of negligent handling in the course of his duties as an Ammo NCO, like the inadvertent possession in *Williams,* his acts would be within the scope of employment, even if off-base possession was unauthorized. There is an absence of evidence in the summary judgment record by which the Court could determine if Carden's possession was incidental to authorized conduct, or in pursuit of his own business or interest substantially different from that of the Army. *Godar,* 588 N.W.2d at 705–06. The Court can only speculate; the alternatives are equally possible. Consequently, plaintiffs cannot meet their burden of proving

that Carden's acts, whatever they were or their intent, were in the scope of his employment. "[S]ummary judgment is proper if 'the nonmoving party has failed to make a sufficient showing on an essential element of her [or his] case with respect to which she [or he] has the burden of proof.'" *Hammond v. Northland Counseling Center, Inc.*, 218 F.3d 886, 891 (8th Cir.2000).

Defendant's motion is **granted.** The Clerk shall enter judgment dismissing the complaint.

IT IS SO ORDERED.