## HOUSTON TRANSP. CO. v. GRIMM.
### No. 11488.

Court of Civil Appeals of Texas. Galveston.

Jan. 21, 1943.

Rehearing Denied March 4, 1943.

Merrill & Scott, of Houston, for appellant.

Allen, Helm & Jacobs, Andrew C. Buckner, and Bert H. Tunks, all of Houston, for appellee.

GRAVES, Justice.

This is a suit for damages for personal injuries sustained by the infant plaintiff, Bobby Jean Grimm, who sues by her father, A. G. Grimm, as next friend, and alleges that she suffered the loss of one of her eyes as the result of an explosion taking place in a heating-stove before which she was being held in the arms of her older sister. It is alleged that the injury was caused by the explosion of an electric blasting-cap, which had previously been negligently left on the premises in the vicinity of her home in the oil field near Gladewater, Texas, by the appellant, Houston Transportation Company, which had previously used the premises as a construction camp, and that the cap had been inadvertently placed in the stove with some trash and was caused to explode by the heat of the wood-fire therein, thus blowing some particle of material out of the stove into the eye of the appellee, causing the total loss thereof.

A trial by jury resulted in a verdict and judgment—entered upon the combined findings of both the court and the jury—against appellant for the sum of $15,000; from which this appeal is prosecuted.

On appeal, appellant's first two points, which go to what its brief calls "the controlling questions of whether the thing that caused the explosion in the stove was an electric blasting cap; and if so, whether it was one left on the premises by appellant", were these:

(1) Its motion for an instructed verdict in its favor should have been given, because the evidence was insufficient to support a finding that appellee's injuries were the proximate result of any act of negligence on its part;

(2) The jury's verdict that appellee's injuries were the direct and proximate result of appellant's negligence was so against the great weight and preponderance of the evidence as to be manifestly wrong.

Neither of these contentions, it is determined, should be sustained. The first of them raises the point that there was no evidence of any probative force supporting the jury's answers to the first four special issues submitted to it, to the effect, respectively, that the appellee had been injured about February 20 of 1937 by the explosion of a dynamite-cap, which had been negligently left by appellant's agents upon its camp-site near Gladewater, and which dereliction had been a proximate cause of such injury.

The second one invokes the exclusive authority of this court to set aside the jury's verdict, if in its opinion it was so against the overwhelming weight of the evidence as to be clearly wrong.

It seems clear, as indicated, that neither of such attacks upon the sufficiency of the evidence to support the jury's stated findings can be upheld; on the contrary, in this court's opinion, not only was there no such overwhelming preponderance against the verdict, but there was enough evidence to sufficiently support those findings, if not an actual preponderance that way.

Indeed, appellant itself thus greatly narrows its position on this phase of the controversy, by thus first admitting that there was evidence of negligence upon its part, and, in consequence, in then limiting its insistence to the claim that such negligence was not shown to have proximately caused the child's injury:

"We do not contend that there was no evidence of negligence, because LeRoy swore there was; but we do insist that the causal connection between that negligence, if this Court feels constrained to accept LeRoy's statement as true, and the explosion which caused the injury to appellee, is not shown by the evidence."

In that connection, it is plain that this court is in no position "to accept LeRoy's statement as true" or not true, since that witness' testimony was not impeached before the jury, whose exclusive province it was to pass upon its credibility.

While it is not required of this court that it reiterate, or even undertake a comprehensive resume of the testimony which it holds to be sufficient as against both of appellant's attacks thereon, this statement of its major features, which is not deemed to be overdrawn, is quoted with approval from the appellee's brief:

"From about June, 1931, to about August, 1935, a group of appellant's employees occupied a camp-site about 2½ miles from Gladewater. During that time those employees used dynamite in their work, and 250 electric dynamite-caps came into their possession, of the ordinary type, with four-foot lead wires on them. * * * About February 20, 1937, A. G. Grimm and his family were living on the land formerly so occupied by appellant. During their occupancy of the camp-site, appellant's employees did not keep a written record either of the amount of dynamite and number of caps that came into their possession, or that were used by them in their blasting operations.

"About February 20, 1937, Leslie Grimm, the 5 year-old brother of the appellee, found something out in the yard, with wires on it. He put it and some paper in an old straw hat of his, and put the hat under the bed in the house. A day or so later his mother, while cleaning the house, found the hat under the bed, and put it in the stove. There was an explosion almost immediately. Florence Grimm, 13 year-old sister of appellee, was sitting in front of the stove holding the appellee, then a baby girl about three months old, in her lap. The explosion caused the injuries, on which this suit is based. The explosion occurred about noon. Mr. Grimm, about five o'clock that afternoon, cleaned out the stove, and found a piece of wire three or four feet long, with copper sticking to it in the ashes. * * *

"Leslie Grimm (then 10 years old) testified that the electric-caps he found after the explosion looked like the one he put in his hat. A. G. Grimm testified that the caps he found around the yard after the explosion had wires on them about the same length as the wire he took out of the stove, when he cleaned it after the explosion. * * *

"It was shown that Joe D. Hughes occupied the camp-site after appellant moved off, for about a year, and that one Barton moved on after Hughes left, and was still there at the time of the trial. Both Hughes and Barton were engaged in construction-work. There was no testimony that either Hughes or Barton ever had any dynamite or caps in their possession, or used any in their work. * * * Lyle Jeter testified that he was the bookkeeper at the store in Gladewater, from which appellant bought its electric-caps, that he knew of no other store in that vicinity who sold those caps, that his store sold no electric-caps to Hughes, or anyone else, other than appellant, up to the time of this injury.

"Leroy Ross, a negro, testified that he worked for appellant at its camp until the latter part of 1933, he then worked for the Humble Company at their warehouse near the camp-site; he then worked for Joe D. Hughes during Hughes' occupancy of the camp; he then worked at a nearby grocery store, so that he worked and lived near the camp-site from the time appellant moved its camp there in 1931 until the time of the injury in 1937; that he saw electric dynamite-caps lying around on the site while appellant's employees were there; that he saw them there while appellant was moving its equipment, that he saw them right after appellant left, and continued to see them around up to the time of the injury; that the caps he saw lying around after appellant left looked like the ones being used by appellant's employees—were the same ones."

It is, therefore, held that this support for the verdict rendered brings this cause within the rules of law applied to closely similar states-of-fact in these two Texas cases: Atex Const. Co. v. Farrow, Tex. Civ.App., 71 S.W.2d 323, error refused; and Ratliff v. Nau, Tex.Civ.App., 36 S. W.2d 254, error dismissed.

■■ Appellant next complains against the trial court's refusal to specially charge the jury not to take into consideration any physical pain or mental suffering the appellee's mother or other member of her family may have endured or might in the future endure on account of the child's injuries, and also of its refusal to sustain appellant's objections to the argument of appellee's counsel before the jury, wherein he "told them of the horrifying experience of appellee's mother resulting from the injuries suffered by her infant child."

The first of these presentments is overruled, because neither the appellee's mother nor any of her family were either parties to the suit or seeking any damages for themselves, nor were their physical pain and mental suffering, if any, that may have naturally been occasioned by the child's injury, so closely intermingled with the elements of damage for which the appellant was held by the trial court to be liable to the appellee, as to reasonably confuse the jury in confining its award against the

appellant to the damage shown by the pleading and evidence to have been inflicted upon the appellee alone.

It is true the father sued herein for the child as its next friend only, but neither he nor any other member of the family sought any damages for themselves whatever; hence, it cannot be said that a jury of ordinary intelligence was unable to distinguish between the pain and suffering those others might naturally have endured by reason of sympathy for the child, and that of the child itself from the serious and permanently disfiguring injury it did sustain—that of the total loss of one of its eyes, with its attendant and enduring ills.

Without further discussion, on the facts stated, these authorities are thought to sustain the court's action in denying both of these requests of the appellant: Johnson v. Smither, Tex.Civ.App., 116 S.W.2d 812, 816, error dismissed; Stayton v. Contreras, Tex.Civ.App., 150 S.W.2d 342.

It may be added that these challenged remarks of appellee's counsel, if susceptible of any such application to the mother as appellant urges, were clearly immaterial, as affected the child, since, as to it, they were in nowise untrue, inflammable, nor improper, but merely described—even if, perhaps, too poignantly—the nature of its very deplorable injuries, to-wit:

"She grabbed the little thing in her arms and held it to her breast and went out into the winter rains in February, and that sensation she must have felt in her arms and as it cried she said she thought it was a death cry and she screamed for help, helpless to do anything, and she bundled that child up, and she was two and a half miles from town and she took the child to the doctor's office and she had to wait for them and when the doctor got there he told her to take it another place and from what she tells you she had to go through a horrifying experience helpless and they had to take the eye ball out without the aid of anesthetic * * *."

Wherefore, the court did not abuse its discretion in overruling appellant's objections. Hubb Diggs Co. v. Bell, 116 Tex. 427, 293 S.W. 808; Emberlin v. Wichita Falls R. & Ft. W. R. Co., Tex.Com.App., 284 S.W. 539; Patterson v. Fuller, Tex.Civ.App., 110 S.W.2d 1230, error dismissed; Employers Liability Assur. Corp. v. Young, Tex.Civ.App., 34 S.W.2d 622, error dismissed; 41 Tex.Jur. 819, Sec. 86; 31 Tex.Jur. 29, Sec. 25.

In its fifth point appellant criticises as "leaving to the jury to determine what degree of care a person of ordinary prudence would exercise in handling dynamite caps", this definition the court gave of negligence: "The failure to exercise that degree of care which a person of ordinary prudence would have exercised in the care and custody of dynamite caps."

Since, under both the pleadings and proof, there was here submitted only one act of negligence on appellant's part—that involving the care and custody of dynamite caps—this court sees no well-taken objection to the definition as so given; indeed, since the dangerous nature of such explosives as dynamite is a matter of common knowledge, the trial court, in such circumstances as here obtained, was justified in assuming that the jury would know what degree of care an ordinarily prudent person would use under those conditions. Atex Const. Co. v. Farrow, Tex.Civ.App., 71 S.W.2d 323, error dismissed.

Moreover, even if the quoted definition could be construed as permitting the jury to base its verdict on a very high, or even the highest, degree of care required in such circumstances, there would still seem to have been no prejudicial error involved, under the holding in the cited Atex case, since as a matter of law the highest degree of care reasonably applicable is required in the handling of such very dangerous explosives.

Under the damage-issue, the court permitted the jury to take into consideration, as the third element, the present cash value of whatever lost earnings the appellee might in reasonable probability sustain in the future beyond the date of this trial, after she had arrived at the age of 21 years, as a proximate result of her injuries; appellant assigns that as error, on the ground that the evidence was insufficient to either sustain a finding that she would sustain any such loss at all, or to enable the jury to properly estimate the amount thereof.

Here again, it is thought, the appellant underestimates the state of the proof as affecting this feature; without extended re-statement, its outstanding features were these:

The proof evidenced not only the total loss of an eye, but also entailed injuries to the child's character and personality—timidity, shyness, embarrassment because of her deformity, and a tendency to refuse to mingle with other children—apparently directly traceable to this injury; and that these characteristics were not exhibited by the other children of the family.

Self-evidently, it would seem, the total loss by the child at such an early age (three months) of one of its eyes, was alone sufficient to support a finding of permanent diminishing of earning-capacity. Texas & P. R. Co. v. Bowlin, Tex.Civ.App., 32 S.W. 918, writ refused.

Other authorities upon varying states-of-facts, which nevertheless are deemed to be at least analogous, are these: Dallas Consol. Electric St. R. Co. v. Motwiller, 101 Tex. 515, 109 S.W. 918; St. Louis Southwestern R. Co. of Texas v. Niblack, 53 Tex.Civ.App. 619, 117 S.W. 188; Texas & P. R. Co. v. Gurian, Tex.Civ.App., 77 S.W.2d 274, error dismissed; Texas & N. O. R. Co. v. Spencer, 244 S.W. 1089.

■ Appellant's claim of excessiveness in the amount of the verdict is overruled without further discussion; in the opinion of this court there was no evidence tending to show that the jury was influenced either by undue sympathy for the appellee herself, or by the claimed suffering of her mother, of any other improper motive, but that, considering the nature of her injuries, her tender age, and her certain prospect of having to go through life under the handicap and the incidental pain as well of the loss of one eye, the amount is not such as to shock the conscience of this appellate court—rather it is considered to have been a reasonable compensation for her present and prospective injuries. The evidence was undisputed that even at her very young age she was already experiencing the grievousness, the suffering, and the disfigurement that tragedy cast upon her, and that, in more or less degree, those ill effects would probably remain with her permanently.

The authorities appellant cites in this connection, when the changes in the purchasing-power of money and in living-costs since the dates of their rendition are taken into consideration, seem to this court to support, rather than otherwise, the reasonableness of the amount allowed in this instance.

The other objections to the judgment are not thought to point out any sustainable ground for a reversal, hence they will be overruled, without further discussion.

It follows from these conclusions that the judgment should be affirmed; it will be so ordered.

Affirmed.