DEZENDORF MARBLE COMPANY v. JERRY GLEN GARTMAN, BY NEXT OF FRIEND, ET AL.

No. A-7825. Decided February 8, 1961.
(343 S.W. 2d Series 441)

536

Looney, Clark, Mathews, Thomas & Harris, James R. Sloan, Donald S. Thomas & Mary Joe Carroll, all of Austin, for petitioner.

Byrd & Davis, of Austin, for respondent.

MR. JUSTICE GRIFFIN delivered the opinion of the Court.

This is a suit for personal injuries suffered by Jerry Glen Gartman as a result of the explosion of a dynamite cap found on the defendant's premises by Jimmy Lynn Gartman, brother of Jerry Glen Gartman. The case was tried to a jury in Travis County, and upon the answers of the jury to the issues submitted, the trial court rendered a judgment in favor of plaintiffs (respondents herein) against the defendant (petitioner herein) in the amount of $63,170.00. On appeal by defendant, this judgment was affirmed by the Court of Civil Appeals. 333 S.W. 2d 404. We affirm the judgment of the Court of Civil Appeals.

The parties will be referred to as they were in the trial court.

The Court of Civil Appeals has a very full and clear statement of the facts, and we shall not set them out again, except to repeat only such facts as are necessary to clarify the issues herein.

On Saturday, May 10, 1958, A. J. Gartman, father of plaintiff

and an employee of defendant, took his family to the defendant's marble quary which is located some five or six miles south of Llano, Texas, and where Gartman was employed. On Friday, the day before, defendant's superintendent, Mr. Wigington, had asked for a volunteer to come to the quarry the morning of the 10th and help him with some work that needed to be done on the premises and for the benefit of defendant. A. J. Gartman volunteered to come and assist with this work and at the same time practice operating the dragline, which he had operated for defendant on May 8th. He also wanted to bring his family to Llano to look for a house into which they could move so as to be close to his work. Gartman's family were then living in Austin, Texas some 60 to 70 miles from defendant's quarry. It was agreed that A. J. Gartman would meet Wigington at Wigington's home in Llano at 8:00 in the morning of May 10th. The Gartmans were late getting away from Austin, and instead of going to Llano, they went directly to the quarry. On arrival Mr. Gartman tried to start the dragline, but flooded the motor and was unable to start it. Within a few minutes Mr. and Mrs. Wigginton arrived. Mrs. Gartman and Mrs. Wigington and the three Gartman boys walked around over the quarry property while the men worked moving defendant's pumps so as to pump the water from places where it had collected in the quarry. About 1:00 or 2:00 in the afternoon, after the work with the pumps had been completed, Mr. Gartman told Mr. Wigington that he would take his family on into Llano to look for a house. But Mr. Wigington insisted that Gartman start the dragline and break up some rocks that had been blasted loose on Friday afternoon so that defendant's crew could begin processing these rocks the first thing on the next working day. Mr. Gartman agreed and the two men started the dragline and Gartman operated it for some one or two hours.

During the time the Gartmans were on the quarry property, Mr. Wigington invited the two ladies and the boys to sit in the office and wait. The weather was hot and the office was uncomfortable; so the women and the boys moved out under a tree near an old Jeep frame. The boys were playing around in that vicinity when Jimmy Lynn Gartman, a deaf mute aged eight, found, near the Jeep, an object to which was attached two loose wires. This object was a dynamite cap. Jimmy crumpled the wires up in his hand, and showed them to his mother. She told him that he should not take them away, and for him to throw them away. She thought he had thrown them away, but instead Jimmy had put the cap and wires in his pocket and had taken it home with him. Neither Jimmy nor his mother knew what this was and neither knew it was dangerous to have such object.

The next day, while the three boys were at home playing with an electric train set, Jimmy, for the first time, showed the blasting cap to plaintiff, Jerry Glen Gartman, aged 14 years. Jerry had seen something in a trash can back of a radio shop near his home which resembled this, and he thought it was a radio part. He talked Jimmy into letting him have the object and first he connected it to his toy radio and later to a toy electric train transformer. When Jerry turned on the electric switch to operate the toy train, the blasting cap exploded in Jerry's eyes inflicting serious and severe injuries. Jerry had to have one eye removed, and the sight in the other eye is severely damaged. Jerry suffered other temporary injuries.

■ The first point which defendant has in his petition for writ of error is that "the Court of Civil Appeals erred in holding that the instant case is controlled by Eaton v. R. B. George Investments, 152 Texas 523, 260 S.W. 2d 587 (1953), and Banker v. McLaughlin, 146 Texas 434, 208 S.W. 2d 843, [8 A. L. R. 2d] (1948)." In his Supplemental Brief filed in this Court, after oral argument of the cause, plaintiffs' counsel says that since Jerry Gartman was neither a trepasser nor a licensee, but simply a member of the general public, they agree that Eaton v. R. B. George Investments and Banker v. McLaughlin, and section 339 of the *Restatement of Torts*, were not applicable to the facts of this case. We agree that the "attractive nuisance" doctrine is not the test by which defendant's liability is to be tested in this proceeding.

Defendant contends that since plaintiff was a trespasser, or, at best, a licensee it owed him no duty, except that of not wilfully injuring him. In the case of Atex Const. Co. v. Farrow, 1934, Texas Civ. App., 71 S.W. 2d 323, wr. ref., Mr. Farrow sued the Construction Company for damages suffered because of the death of his son. Some three years prior to the son's death, the Construction Comany crew had camped in the Richardson pasture near the Farrow home for four or five days. During this period the crew had on hand dynamite caps and used some of them in blasting operations. When the crew moved camp, the evidence showed there were dynamite caps left in boxes and scattered over the grounds of the camp. Three years later the Farrow child found some of these caps, gathered a number of them in his hands and when the caps were exploded, the child was killed. In discussing the liability for negligence of one using dangerous instrumentalities resulting in injury or death to third parties, the Court said:

"The authorities are legion holding that a master who uses dangerous instrumentalities, such as dynamite caps, in the prose-

cution of his business is charged with the highest degree of care in the custody and use thereof, and, when he intrusts them to a servant or employee, the proper custody and use thereof become a part of such servant's or employee's employment, and he must use the same degree of care and attention as the law requires of the master; and, when such dangerous instrumentalities are negligently permitted to escape the custody or possession of the servant or employee and injury is done to a third person, the master is liable for the consequences of such injury. The master is also liable for the passive negligence of his servant or employee in failing to safely keep such dangerous instrumentalities committed to his care in the discharge of the master's business and in failing to· take proper precautions for the protection of the public. Branch v. I. & G. N. Ry. Co., 92 Texas 288, 47 S.W. 974, 71 Am. St, Rep, 844; City of Lubbock v. Bagwell (Texas Civ. App.), 206 S.W. 371, writ of error refused;" citing numerous other authorities from other states.

For other cases declaring the same rule, see Walker, Inc. v. Burgdorf, 150 Texas 603, 244 S.W. 2d 506 (1951); Boyer v. Guidicy Marble, Terrazzo & Tile Co., (Mo., 1952) 246 S.W. 2d 742.

"The courts are in complete accord upon the proposition that a user or storer of explosives owes a high degree of care to avoid injury to children who might have access to them, the precise degree of care being commensurate with the danger involved." 10 A.L.R. 2d 27. This exhaustive annotation includes authorities bearing both on the liability of the user of explosives and also on the question as to his negligence being a proximate cause of injury suffered by one from the explosion of these dangerous instrumentalities, both on and off the defendant's premises. Defendant argues that, granting for the sake of argument, they were negligent in the handling of the cap (which they vigorously deny) no recovery can be had against them for there is no casual connection between such negligence and the injury suffered the next day by plaintiff, Jerry Glen Gartman. Defendant says he could not be charged with foreseeing such result. The cases hold that all the defendant has to foresee is that someone would be injured by an explosion of the blasting cap. The details of how the explosion was triggered are not required to be foreseen. Foreseeability of some similar injury is all that is required. "* * * As a person of ordinary intelligence and prudence, he [defendant] should have anticipated the danger to others created by his negligent act ,and the rule [of foreseeability] does not require that he anticipate just how injuries will grow out of that dangerous situation. Sullivan v. Flores, 134 Texas 55, 132 S.W. 2d 110 (1939);

see also McAfee v. Travis Gas Corporation, 137 Texas 314 153 S.W. 2d 442 (1941) ; Robert R. Walker, Inc. v. Burgdorf, supra; City of Lubbock v. Bagwell, 1918, Texas Civ. App., 206 S.W. 371, wr. ref.; Atex Const. Co. v. Farrow, supra; Natatorium Laundry Co. v. Saylors, 1939, Texas Civ. App., 131 S.W. 2d 790, wr. dism., cor. judgm.; Houston Transport Co. v. Grimm, 1943, Texas Civ. App., 168 S.W. 2d 892, wr. ref., w.o.m.; 10 ALR 2d 123.

■ Defendant urges that plaintiffs sought a recovery on the basis of the "attractive nuisance" doctrine, both in the trial court and in the Court of Civil Appeals, and that in this court plaintiffs have completly changed their theory. While plaintiffs have not abandoned the "attractive nuisance" doctrine as a basis for recovery they, for the first time, urge that defendant is liable for its negligence in the handling of the dynamite cap, which negligence was a proximate cause of the injury done to Jerry Glen Gartman. The facts show that Jerry Glen was not injured on the premises of defendant, but that he was injured in his own home on the day following the finding of the dynamite cap by his brother, Jimmy Lynn Gartman, on the premises of the defendant. Plaintiffs say that one using dangerous instrumentalities on his premises must exercise a high degree of care in using such instrumentalities to prevent injury to members of the public. Plaintiffs allege certain acts of negligence on the part of the defendant in its failure to exercise this high degree of care, and that such negligent acts were proximate cause of the injuries suffered by Jerry Glen Gartman.

In order that plaintiffs may recover they must have pleadings supporting their theory of recovery; the record must contain evidence to support these pleadings; the jury, or other fact finder, must have found, from the evidence at the trial, that such negligent acts were committed by defendant and that the same were a proximate cause of the injury. Plaintiffs' pleadings show allegations that defendant was in charge of, and operating, the premises on which Jimmy Lynn picked up the dynamite cap, that the cap was used by defendant in the course of its business of operating the quarry; that with knowledge and consent of defendant small children were permitted to play freely upon the premises and in the vicinity where the dynamite cap was found by Jimmy Lynn Gartman on the occasion in question; that the dynamite cap was a dangerous instrument; that defendant was guilty of negligence in not properly inspecting the premises for loose dynamite caps; in failing to keep a written record of the caps as received and as used; that defendant could and should have known small children would be upon and walking over the premises; in permitting its

employees to carry dynamite caps with attached wires in their pockets while said employees were engaged in defendant's business. It is our opinion that these are appropriate allegations of proximate cause based on the negligence alleged.

The cause was submitted to the jury and it was found that (1) defendant knew, or should have known, that young children were likely to be present on the premises; (2), (3) and (4) that Jimmy Lynn Gartman found the dynamite cap on defendant's premises, and that the cap belonged to defendant, but that Jimmy Lynn Gartman did not realize the risk involved in picking up the cap and taking it home, and (5) that plaintiff, Jerry Glen Gartman, did not realize the risk involved in connecting the cap to an electric current; (6) that Jake Gonzales carried dynamite caps in his pockets which was negligence and a proximate cause of the explosion; (7) that defendant failed to adequately inspect its premises for loose caps, which was negligence and a proximate cause of the explosion; and (8) defendant failed to maintain proper custody and control of the cap in question which was a proximate cause of the explosion. There are other issues which were submitted to the jury and all were answered favorably to the plaintiffs.

Defendant's second point is that "the Court of Civil Appeals erred in affirming the judgment of the trial court in that there was no evidence of one or more of the elements essential to recovery on any ground of negligence found by the jury," and contending also that there is no evidence of casual connection on the grounds of negligence found by the jury. The evidence in this case shows that defendant used blasting caps, similar to the one found by Jimmy Lynn Gartman, in the necessary operation of its business; that an employee of defendant was entrusted with the duty of inserting the caps in the holes prepared for their use, and connecting these caps in circuit so they could be detonated, and by force of their explosion loosen the marble to be recovered and processed by defendant in its ordinary business; that these caps are highly explosive and very dangerous; that no one other than defendant, its agents and servants had ever used blasting caps on these premises; that no written record was kept of the number of blasting caps received, the number used, and the number remaining after use; that there were occasional misfires in the use of the caps; that blasting caps had been used in blasting operations on Friday afternoon, May 9th; and that children, with the permission of defendant, on many occasions, were on the premises playing on and around the old Jeep frame where Jimmy picked up the caps.

There is evidence that the defendant would shoot several holes at one time, and that it was necessary to insert one dynamite cap in each hole; that there should be an inspection of each hole after each blast to determine whether or not all caps had fired, or if some were misfires, or had been blown from the hole undetonated. The evidence shows this was not done. Also there is evidence showing that no adequate inspections were made of the premises. The cap in question had the bright wire attached, but it was not a fresh cap according to the evidence. The jury could well believe it had been lying at the place where found for some time, and that an adequate inspection would have resulted in the defendant finding the cap and removing it from that place. When we consider the evidence that there was no accurate check kept on the caps, their use, and the number of misfires; that no systematic inspection was made of the blasting holes after detonation, and the other evidence set out above by us, and that set out in the opinion of the Court of Civil Appeals, we hold there is evidence to support the grounds of negligence found against defendant by the jury, and that each of these was a proximate cause of the explosion.

There was evidence that Gonzales, on occasion, carried blasting caps in his pockets while transporting them from the house in which they were kept to the blasting holes where they were used; that Gonzales, on occasion, would cut pieces off the wire attached to the caps when such wires were needed to properly wire the circuits; that Jake Gonzales, defendant's employee intrusted with the dynamite caps, had eaten lunch on or near the old Jeep frame on many occasions; that frequently the blasting holes would all be prepared and wired before lunch and that Gonzales would then eat his lunch and afterwards connect the blasting caps in circuit for detonation; that the blasting caps, when received were "shucked" and "shunted;" i.e., the two wires were fastened together at the end farthest from the metal cylinder or cap proper with a lead device called a "shunt," the purpose of which is to ground the lead wires together to reduce the hazard of extraneous current getting inside the cap and igniting it. The new caps are packaged separately with the two wires in a figure "8" coil, like shoestrings, and banded with a "shuck" to prevent the wires from one cap from tangling with the wires from other caps. The cap picked up by Jimmy had neither "shunt" nor "shuck," and the wires were less than the usual and normal length.

Defendant's third point states that to affirm the decision of the Court of Civil Appeals is to establish an absolute liability upon the user of potentially dangerous substances without any negligence on the part of the defendant. The authorities cited and

discussed above recognize there must be negligence on the part of the defendant before there can be any liability against him, and that such negligence must be a proximate cause of the injury and damages suffered.

The judgment of the Court of Civil Appeals is affirmed.

ASSOCIATE JUSTICE STEAKLEY not sitting.

Opinion delivered February 8, 1961.