## No. 21145.

### Bradley Calkins *v*. Ralph Albi, a minor by his mother and next friend, Della Albi.
(431 P.2d 17)

Decided August 28, 1967.

372

WILBUR M. PRYOR, JR., WILLIAM H. HAZLITT, WELLER, FRIEDRICH and HICKISCH, for plaintiff in error.

FRANK A. BRUNO, H. D. REED, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE HODGES.

NINE year old Ralph Albi, the defendant in error, who will be referred to herein as Ralph, lost the sight of his right eye as the result of the explosion of a firecracker, or more specifically a cherry bomb, which he held in his hand after igniting it. As the plaintiff in the trial court, he recovered a judgment for $60,000 by verdict of the jury against Bradley Calkins, who will be referred to as Bradley herein, and Joseph Maltese, based upon their alleged negligence in causing this cherry bomb to ᵇe in Ralph's possession.

Maltese, who did not join in this writ of error, operated a fireworks stand in Arapahoe County prior to the July 4th holiday. From this fireworks stand, Bradley, who was sixteen, purchased some cherry bombs. He then gave one of the cherry bombs to Ralph under the following circumstances. Bradley drove to the neighborhood where he once lived and stopped to chat with Ralph and two other boys. One of the boys inquired as to the contents of a sack they observed in Bradley's auto, and upon being told it contained fireworks, the boys asked to see them and one of the boys asked if they could have one. Bradley testified he gave a firecracker to each of the boys, and told them that upon lighting it, to get away as it would explode. Ralph testified that when Bradley gave him the firecracker he said he had a present for him and that "they make a big noise." He did not recall Bradley saying to stand back after lighting it.

After receiving the cherry bomb from Bradley, Ralph entered his home and showed it to his mother, Della

Albi, who testified she took it from her son and placed it in the pocket of an apron she was wearing, with the admonition that he must "stay away from it." Later, when Ralph was out of sight, his mother, with the aid of a foot stool, placed the cherry bomb to the rear of a high shelf "among some boxes and different things" in the closet of her bedroom. As to these facts, Mrs. Albi testified "I thought it would be about the safest place and out of the way and just to get it out of my pocket for the time being" and because "I didn't know how nor I didn't know where I could dispose of it." In her testimony, she also stated she considered the cherry bomb "dangerous enough."

The following day was July 4th and during the morning Ralph while looking for something to do started searching for an airplane model. He got a chair, placed it in the closet of his mother's bedroom, and while perusing the contents of the shelf discovered the presence of the cherry bomb, which, however, he did not handle at this time. On the following morning, he again went to his mother's bedroom and on this occasion he removed the cherry bomb from the closet shelf. He took it to the front patio, tried to light the fuse, but found it wouldn't light. He then got his pocket knife out and carved a hole near the fuse to bring the fuse out, but it wouldn't come out. There were two pieces of punk on the patio, apparently left over from a fireworks display which the family had the evening before. Ralph took one of the punks, went to a gas stove in his home, lit the punk, returned to the patio, and inserted the punk into the hole he had carved in the cherry bomb. Nothing happened. He then lit the second punk and holding the cherry bomb in his right hand he inserted the lit punk into the hole he carved. The cherry bomb exploded causing the loss of the sight of his right eye.

The record on error and the briefs of counsel reflect the following assignments of error which in our view

presents substantial and meritorious questions for our consideration:

1. That the trial court erred in denying Bradley's motion for a directed verdict on the grounds that the evidence conclusively showed that the act of Ralph's mother, Della Albi, constituted an efficient intervening cause and was therefore, in fact, the proximate cause of Ralph's injuries, thereby cutting off Bradley's liability.

2. In the alternative, that the trial court erred in giving Instructions No. 12 and 13, on the grounds that Instruction No. 12 incorrectly states the law with respect to a child of nine years being incapable of violating a statute; and that Instruction No. 13 implied, contrary to law, that Bradley could have violated the statute prohibiting the sale, explosion, or use of explosive fireworks, thus, imposing statutory or per se negligence upon Bradley's act of giving the cherry bomb to Ralph. It is also claimed by Bradley that the combined effect of Instructions No. 12 and 13 confused and misled the jury to the prejudice of Bradley and that there is no basis in law for the giving of either of these instructions.

I.

The question of whether the acts of Ralph's mother, Della Albi, constituted an efficient intervening cause, and therefore the proximate cause of the injury to Ralph, is discussed extensively in the briefs of the parties. It is Bradley's position that the evidence is conclusive in his favor, and therefore the trial court erred when it denied his motion for a directed verdict, and later when it denied his motion for judgment notwithstanding the verdict. In other words, Bradley maintains that the trial court on the basis of the evidence adduced should have, as a matter of law, ruled that Della Albi's acts constituted an efficient intervening cause of the injury, thereby becoming the proximate cause and rendering Bradley's act remote in the chain of causation.

It is essentially Ralph's position that the matter of intervening cause is for jury determination, and there-

fore, the court properly left this issue for the jury which by its verdict resolved it in favor of Ralph.

■ The mainstay of Bradley's argument for reversal on the point of intervening cause is that when Della Albi took the cherry bomb from Ralph, the danger of injury to Ralph ceased, and the dangerous instrumentality was put to rest in the position of safety. Bradley reasons therefore that the natural and continued sequence emanating from his act terminated in a position of repose, and without some new impetus no harm could have resulted; and that the new impetus, which therefore was the proximate cause of Ralph's injury, was Della Albi's unsuccessful, and perhaps negligent attempt to successfully dispose of or secrete the cherry bomb so that it would not again get into the hands of Ralph. Bradley avers that this interpretation of Della Albi's acts is consistent with the following definition of proximate cause set forth in *Stout v. Denver Park and Amusement Company*, 87 Colo. 294, 296, 287 P.650, and which is generally recognized and has been enunciated many times by this court as an acceptable definition:

"Proximate cause is that which, in natural and continued sequence, unbroken by any efficient, intervening cause, produced the result complained of, and without which that result would not have occurred."

■■ It is Bradley's theory, based on the above definition, that the force and effect behind his gift of the dangerous instrumentality came to rest when the cherry bomb was taken from Ralph by his mother, and therefore the natural and continued sequence of his act was halted, and at best it became the remote cause of the injury. This is merely Bradley's theory of the facts and it is not conclusive as a matter of law. The fact situation here, considered in the light of the above definition, and based upon the evidence, some of which is in dispute, is subject to other valid interpretations and conclusions which are the prerogative of the jury to determine. The jury is the judge of the force and effect of the evidence

as it pertains to the issues of fact, one of which is the issue of proximate cause. By its verdict, the jury found that Bradley's act was the proximate cause of Ralph's injury. Consequently, it follows that the jury also found that Della Albi's acts were not of such a character as to amount to an efficient intervening cause and therefore the proximate cause of her son's injury. This finding on the facts is in line with the rationale of the following statement of the Restatement, Torts § 443, (Negligence): "An intervening act of a human being . . . which is a normal response to the stimulus of a situation created by another's negligent conduct, is not a superseding cause of harm to another which the actor's conduct is a substantial factor in bringing about."

The jury, for example, could have found that Bradley's acts of giving the cherry bomb to Ralph and Bradley's statements about the cherry bomb, the exact nature of which statements are in dispute, caused a natural curiosity and fascination in Ralph, which carried through and were the motivating forces which impelled Ralph to remove the cherry bomb from the closet shelf, to experiment with it as he did, and to ignite it. The facts postured in this way would classify Bradley's acts as the acts which set in motion certain forces which were not placed to rest by Della Albi's acts but rather continued on to point of injury. In other words, Bradley's acts constituted a substantial factor in bringing about the injury.

The briefs of counsel do not cite any Colorado case involving this question of efficient intervening cause in a similar fact situation and we have been unable to discover such a case. We have, however, noted and examined numerous firecracker and explosive cases from other jurisdictions involving parent intercession, both of commission and of omission, between the acts of the defendant and the injury to the child.

One of these cases is *Kingsland v. Erie County Agricultural Society*, 298 N.Y. 409, 84 N.E.2d 38, Annot., 10

A.L.R.2d 1. The facts of that case are similar in some respects to the case at bar. A minor found a "dud" bomb at the county fair grounds following a fireworks display. On arriving home, he was told by his mother that he should return the bomb to the fair grounds and that in the meantime he should put it outside the house under the porch steps. This he did not do, but left it where it was accessible to a younger brother, who got possession of it and was injured when it exploded. The jury verdict was affirmed against the agricultural society, which had appealed the lower court's denial of its motion to set aside the jury verdict in favor of the injured child. The court here held that the issue of proximate cause was properly left to the jury for its determination as to whether the plaintiff's negligence in leaving dud bombs at a location accessible to children was the proximate cause or whether the mother's failure to take the bomb from the minor child was an efficient intervening cause and therefore the proximate cause. The court further emphasized that the extent of the parent's knowledge of the dangerous character of the article is an important consideration and that this must be considered by a jury in its determination of proximate cause.

See also *Diehl v. A. P. Green Fire Brick Co.*, 299 Mo. 641, 253 S.W. 984; *Mathis v. Granger Brick & Tile Co.*, 85 Wash. 634, 149 P.3; *Beasley v. United States*, 81 F. Supp. 518; and *Dezendorf Marble Co. v. Gartman*, 161 Tex. 535, 343 S.W.2d 441. Each of these cases involves a child coming into possession of an explosive item through a defendant's act, and the intercession of a parent's act or omission. In each case, recovery of damages by the child was upheld generally on the ground that the parent's intercession, even though negligent, did not amount to an intervening cause of such character as to cut off the primary negligence of the defendant, who set in motion the chain of causation, from which it might

reasonably be anticipated that the injury which occurred would result.

██ We hold, therefore, that the court properly denied Bradley's motion for a directed verdict and later Bradley's motion for judgment notwithstanding the verdict, and that the issues of proximate cause and intervening cause were properly submitted to the jury.

II.

It is contended on behalf of Bradley that Instruction No. 13, quoted as follows, is erroneous, ambiguous and misleading:

"INSTRUCTION NO. 13

The Court instructs the jury that if, from a preponderance of the evidence, you find that the defendants, either or both of them, violated the Statute of the State of Colorado which has been defined for you in Instruction No. 11, such violation constitutes negligence per se; that is to say, negligence in and of itself. You are further instructed that if, from a preponderance of the evidence, you further find that as the direct and proximate result of the violation of the Statute the plaintiff suffered the injuries of which he now complains, it will be your duty to find for the plaintiff and against the violator or violators of the Statute, provided, however, that you further find that the plaintiff was free from contributory negligence as that term has in these instructions been defined for you."

This instruction must be read in conjunction with Instruction No. 11 which sets forth in part C.R.S. 1963, 53-5-1 and 2 which defines fireworks and makes it unlawful.

". . . to offer for sale, expose for sale, sell, or have in his possession with intent to offer for sale or sell, or to use or explode any fireworks in the state of Colorado."

These provisions of law will hereinafter be referred to as the "fireworks statute."

We will first consider whether this instruction is erroneous as a matter of law. The instruction in effect

tells the jury that Bradley's act of "giving" the cherry bomb to Ralph could be found to be negligence per se. The lower court in giving this instruction obviously felt that the words "to use" in the fireworks statute were broad enough to include Bradley's "giving" of the cherry bomb to Ralph; this being the *only act* as shown from the record for which Bradley could be held accountable in damages.

■■ On behalf of Ralph it is urged that the phrase "to use" in the fireworks statute be construed with common sense, keeping in mind that one of the purposes of the fireworks statute is the prevention of the very danger that caused Ralph's injury. In our view, this argument has no validity. A violation of any of the provisions of the fireworks statute is a misdemeanor and punishable by a fine, or imprisonment, or both. It is axiomatic that a criminal or penal statute be strictly construed in favor of the one against whom it is sought to be enforced. *People v. Mooney*, 87 Colo. 567, 290 P.271, *Failing v. People*, 105 Colo. 399, 98 P.2d 865.

■ The fact that negligence per se or statutory negligence is involved here rather than criminal responsibility makes no difference in construing a criminal or penal statute. It would be absurd to say that where negligence per se or statutory negligence is an issue, a penal statute has a different meaning or is subject to a liberal construction as opposed to the meaning it must be given in a criminal case where the rule of strict construction is applicable.

■ The "giving" or the "gift" of an item of fireworks from one person to another cannot by any rule of construction be read into the fireworks statute. The giving of or a gift from one to another is not one of the prohibited acts under this statute. The "gift" or the act of "giving" is commonly defined as a voluntary transfer of property by one to another without any consideration or compensation therefore. The definition of "use" as shown generally in recognized dictionaries fails to in-

clude any reference, which by the use of the most liberal rules of construction would encompass a gift or the act of giving. In *Murphy v. Traynor,* 110 Colo. 466, 135 P.2d 230, the definition of the word "use" as a verb is given as follows:

"The verb 'use' or 'used' has two meanings recognized by all lexicographers and unconsciously differentiated in common speech. 1. - To employ or be employed or occupied. In this sense the word would include a single isolated instance of use. 2. - To practice customarily or (in the case of a place or thing) to be the subject of customary practice, employment or occupation."

We hold therefore that the trial court erred as a matter of law in giving Instruction No. 13 because it erroneously told the jury in effect that Bradley's act of "giving" could be found to be a violation of the fireworks statute and therefore negligence per se or statutory negligence.

In addition, and assuming arguendo, that Bradley's act could be found to be negligence per se, Instruction No. 13 as worded is ambiguous and confusing in several respects; however, because this instruction is improper as a matter of law, it is unnecessary to detail the ambiguous and confusing aspects.

The giving of Instruction No. 12 quoted as follows:

"INSTRUCTION NO. 12

The court instructs the jury that a child of the age of nine (9) years is incapable of a violation of the state statute."

presents a double pronged problem.

On the one hand, this instruction is not an accurate statement of the statutory law. C.R.S. 1963, 40-1-4 provides as follows:

"An infant under the age of ten years shall not be found guilty of any crime or misdemeanor."

The meaning of this instruction to the jury could well have been that Ralph, because of his age, is ab-

solved of all fault. If the jury gleaned this meaning from Instruction No. 12, it would have been misled, or at least confused, since the possibility of Ralph's contributory negligence was the subject of other instructions, particularly Instruction No. 6 which instructed the jury that a child of nine years of age is required only to exercise such care for his safety as may be fairly and reasonably expected from a reasonably prudent child of like age, intelligence and experience.

On the other hand, we perceive that the court gave this instruction in an attempt to tell the jury that because of Ralph's age, the statutory or per se negligence rule must give way to the special consideration rule applicable to young children as stated in Instruction No. 6. It seems apparent that the court in giving Instruction No. 12 wanted to convey to the jury that even though Ralph exploded the cherry bomb, an act prohibited by the fireworks statute, his act should be measured by the application of the special consideration rule for children rather than the negligence per se rule. We agree with this principle in its application to an infant under ten years of age because of C.R.S. 1963, 40-1-4, *supra*. Since statutorily an infant under ten years of age cannot be held criminally accountable and punishable for an act prohibited by law, it follows reasonably that he should not be held to be contributorily negligent per se for the same act. Also, to hold that nine-year old Ralph could be contributorily negligent per se would, in effect, deprive him of the application of the special consideration rule.

It is a question of fact for the jury to say whether or not Ralph, having in mind his age, intelligence, and experience, had sufficient mental and physical capacity to be capable of common law contributory negligence only. As stated in *Locklin v. Fisher*, 264 App. Div. 452, 36 N.Y.S.2d 162:

". . . To hold the statute applicable to minors who have not reached the age of understanding or to those men-

tally unable to comprehend its requirements is carrying the law of negligence to a point which is unreasonable and is establishing a doctrine abhorrent to all principles of equity and justice."

See also *Van v. Clayburn*, 21 App. Div.2d 144, 249 N.Y.S.2d 310, and *Hicks v. Demascole*, 25 App. Div.2d 487, 266 N.Y.S.2d 959.

The reasoning behind the principle that the negligence per se rule gives way to the special consideration rule for infants is well expressed by Professor J. Douglas Mertz in an article at 51 Dick. L. Rev. 79 as follows:

"In civil law, the infant is presumed not to have the adult capacity to perceive danger; therefore his conduct is measured by a special standard of behavior. In criminal law, the same infant is presumed incapable of committing a crime because he is presumed not to possess the criminal intent. To declare that he is negligent per se in civil law, thereby depriving him of the usual consideration given in that sphere of the law, because he violated a criminal statute, when the criminal law would give him a special consideration were he accused in that sphere; seems incongruous."

Instruction No. 12 fell far short of properly instructing the jury in this respect. Failing in its real purpose, the result was an instruction which could have certainly confused the jury as to the proper rule applicable in determining whether or not nine-year old Ralph was contributorily negligent.

Instructions No. 12 and 13 distorted and confused the issues of negligence, proximate cause and contributory negligence. As given, these instructions constituted prejudicial error as to Bradley. Therefore, the judgment is reversed for a new trial as to Bradley.

The judgment is reversed and the cause remanded for a new trial consistent with the views herein expressed.

Mr. Chief Justice Moore, Mr. Justice Day and Mr. Justice Kelley concur.