Albert GARZA and Felicita Garza, Individually and as Next Friend of their Child, Robert Garza, a Minor, Plaintiffs-Appellees,

v.

UNITED STATES of America, Defendant-Appellant.

No. 85–1698.

United States Court of Appeals, Fifth Circuit.

Feb. 17, 1987.
Rehearing Denied March 30, 1987.

Jeffrey A. Clair, U.S. Dept. of Justice, Washington, D.C., Marvin Collins, U.S. Atty., Stafford Hutchinson, Asst. U.S. Atty., Dallas, Tex., Robert S. Greenspan, Atty., U.S. Dept. of Justice, Washington, D.C., for defendant-appellant.

Floyd D. Holder, Jr., Lubbock, Tex., for plaintiffs-appellees.

Before REAVLEY and POLITZ, Circuit Judges, and BELEW,* District Judge.

POLITZ, Circuit Judge:

In this Federal Tort Claims Act litigation, 28 U.S.C. §§ 2671–80, we must determine whether the United States is liable for negligence in its handling of an explosive used in a training exercise which was stolen by a serviceman, removed from a military base, given to a civilian, left in an apartment when it was vacated, found by a 13–year-old boy who was helping his mother clean the apartment, and detonated by him causing his injury. The trial judge found the government negligent and found the child's injury foreseeable and proximately caused by the negligence. Concluding that the sequence culminating in injury was not reasonably foreseeable, we reverse.

* District Judge of the Northern District of Texas, sitting by designation.

*Background*

During the first few weeks of 1981, Reese Air Force Base, Texas, authorities held a training exercise known as "Prime Beef" at an auxiliary field in rural Terry County, Texas. The program called for the simulation of battlefield conditions and included the use and detonation of devices identified as "Simulator and Projectile Ground Burst: M115A2." The exercise was uneventful except that as it ended a light snow was falling and two to three inches accumulated.

At completion of the exercise there was no programmed or disciplined effort to recover any unused or unexploded simulators. Meaningful distribution, use, and return procedures were not utilized. The area covered by the activities was not subjected to "policing," the omnipresent military action, nor were personnel departing the area searched or cautioned about removing the simulators from the base.

Several days after the exercise, Airman First Class Scott Cartlidge, routinely patrolling the base in his role as a firefighter, discovered several of the simulators. Cartlidge's duties did not include the location and removal of live ammunition or explosives. He was to report any such discovery to his superiors who would refer the matter to specially trained personnel. Cartlidge did not make the required report. Instead, he detonated most of the simulators and secreted one in his field jacket, surreptitiously removing it from the base to the off-base apartment he shared with another G.I. and a civilian.

Sometime after his theft and removal of the simulator, Cartlidge gave it to his civilian roommate, who placed it in a dresser drawer where it remained for over one and one-half years, until the apartment was vacated. The simulator was discovered by young Robert Garza when he was assisting his mother in the cleaning of the apartment preparatory to occupancy by new tenants. Garza took the simulator and struck it with a hammer. At that point, or subsequently when he touched a lighted match to it, the simulator exploded, burning the youth but, fortunately, causing no permanent disability or significant disfigurement.

Cartlidge was charged in a court martial and found guilty of two offenses, including theft of the simulator. Following a bench trial, the trial judge awarded recovery of $4,023.95 for medical expenses and $40,000 for general damages. The government noted its appeal, contending that the trial judge erred in finding liability.

*Analysis*

Under 28 U.S.C. § 1346(b) the district court has

> exclusive jurisdiction of civil actions on claims against the United States, for money damages ... for ... personal injury ... caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

The Federal Tort Claims Act makes the United States liable for tort claims "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. Section 2671 thereof defines an employee of the government to include "members of the military or naval forces of the United States" who are "acting in line of duty."

■ Whether military personnel are acting within the line of duty is determined by applicable state rules of *respondeat superior, Williams v. United States*, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955). The determination of liability *ex delicto* is likewise determined by the substantive law of the state in which the tortious act or omission occurred. *See, e.g., Williams v. United States*, 352 F.2d 477 (5th Cir.1965).

*Negligence*

■ The district court found that the United States was negligent in "[p]ermitting these simulators to be left openly on

the ground, accessible to anyone in the vicinity and without any storage or other suitable guard," and in "[f]ailing to properly police and clean up the area after the maneuver was over so that any unexploded missile or ammunition could be removed." The existence of a legal duty is a question of law, *McGonigal v. Gearhart Industries, Inc.*, 788 F.2d 321 (5th Cir.1986); *Leonard v. Aluminum Co. of America*, 767 F.2d 134 (5th Cir.1985), but the breach of that duty—negligence—is a question of fact. *Welch v. Heat Research Corp.*, 644 F.2d 487 (5th Cir.1981); *Atchison, Topeka and Santa Fe Ry. Co. v. Standard*, 696 S.W.2d 476 (Tex.Civ.App.1985).

The trial court correctly perceived that under Texas law, one who deals with explosives is required to use a high degree of care, the duty being proportionate to and commensurate with the dangers involved under the given circumstances. *Dezendorf Marble Co. v. Gartman*, 161 Tex. 535, 343 S.W.2d 441 (1961); *Walker, Inc. v. Burgdorf*, 150 Tex. 603, 244 S.W.2d 506 (1951); *Genzer v. City of Mission*, 666 S.W.2d 116 (Tex.Civ.App.1983). The court found the government's conduct wanting because of the lack of control of the distribution, use, and return of the explosives. The government's suggestion that the isolation of the base, which was surrounded by a four-strand barbed-wire fence, bearing periodic no-trespassing warnings, militated against a finding of its negligence, is not without persuasive force; however, the trial court's factual finding to the contrary is protected by the shield of Fed.R.Civ.P. 52(a) and may be rejected on appeal only if we have a definite and firm conviction that an error was committed.

Considering the elevated duty of care imposed by Texas law on those who use and handle explosives, we are not prepared to say that the trial court erred factually or legally in finding the government negligent

for its failures in the use, monitoring, and control of the explosive simulators.

### *Proximate Cause*

■ Before there may be recovery for negligence, that negligence must be the proximate cause of the injury. Proximate cause involves consideration of two components, cause-in-fact and foreseeability. *Pope v. Rollins Protective Services Co.*, 703 F.2d 197 (5th Cir.1983); *Williams v. Steves Industries, Inc.*, 699 S.W.2d 570 (Tex.1985). Negligence is a cause-in-fact of a harm when the injury would not have occurred without it. *Williams v. Steves; Nixon v. Mr. Property Management, Inc.*, 690 S.W.2d 546 (Tex.1985). Although not required to joust at windmills when the negligent conduct is an omission, the plaintiff must establish the probability that the exercise of reasonable care would have prevented the injury.[1] We agree with the trial judge that the evidence sufficiently establishes this element.

The second component of the proximate cause equation—foreseeability—involves a much more difficult factual and legal assessment. The Texas authorities teach that a danger is foreseeable when "the actor, as a person of ordinary intelligence, should have anticipated the dangers that his negligent act created for others." *Nixon v. Mr. Property Management*, 690 S.W.2d at 550; *Northwest Mall, Inc. v. Lubri-Lon International, Inc.*, 681 S.W.2d 797 (Tex.Civ.App.1984). "For a result to be legally foreseeable, ... it is not 'required that the particular accident complained of should have been foreseen. All that is required is "that the injury be of such a general character as might reasonably have been anticipated; and that the injured party should be so situated with relation to the wrongful act that injury to him or to one similarly situated might reasonably have been foreseen." ' " *Motsenbocker v. Wyatt*, 369 S.W.2d 319, 323 (Tex.

---

1. *See, e.g., Tibbits v. Crowell*, 434 S.W.2d 919 (Tex.Civ.App.1968) (failure of building owner to install fire escape not proximate cause of occupant's death there being no proof that decedent could have used fire escape); *Cannady v. Dallas Ry. & Terminal Co.*, 219 S.W.2d 816 (Tex.Civ. App.1949) (failure of driver to keep a proper lookout for train at rail crossing is proximate cause of accident only if it would have prevented the accident).

1963) (citations omitted). *Accord Missouri Pac. R. Co. v. American Statesman*, 552 S.W.2d 99 (Tex.1977); *Batko v. Mecca Inv. Co.*, 642 S.W.2d 41 (Tex.Civ.App.1982); *Hall v. Atchison Topeka and Santa Fe Ry. Co.*, 504 F.2d 380 (5th Cir.1974). The "actors" in the case at bar are those military authorities and personnel responsible for the mishandling of the simulators. The cast of actors does not include Cartlidge who was not acting "in line of duty."

Not unlike other jurisdictions, in Texas both components of proximate cause present questions of fact, *Farley v. M M Cattle Co.*, 529 S.W.2d 751 (Tex.1975); *Clark v. Waggoner*, 452 S.W.2d 437 (Tex. 1970), unless reasonable minds are compelled to a single conclusion, in which event the matter becomes a question of law. *Friedan v. Pan Tex Hotel Corp.*, 653 S.W.2d 365 (Tex.Civ.App.1983). *Accord Fort Worth and Dallas Railway Co. v. Threadgill*, 228 F.2d 307 (5th Cir.1955); *North River Insurance Co. v. O'Neal*, 521 S.W.2d 647 (Tex.Civ.App.1975); *Lone Star Cab v. Chatham*, 449 S.W.2d 790 (Tex.Civ. App.1970).

The citations furnished by counsel, and the results of our independent research, reveal few Texas cases addressing foreseeability in instances involving explosives, but those authorities we have reviewed convince us that the reach of liability in the instant case is more limited than that envisioned by the trial judge.

The leading case, the application and significance of which is disputed by the parties, is *Dezendorf Marble Co. v. Gartman*, 333 S.W.2d 404 (Tex.Civ.App.1960), and its affirmance in 343 S.W.2d 441 (Tex.1961). In *Dezendorf*, on a Saturday, an off-day, an eight-year-old child accompanied his father to a rock quarry. While his father worked for a brief period, the child wandered around and found a dynamite blasting cap. Unbeknownst to the father, the

child took the blasting cap home and gave it to his 12-year-old brother. The older child, thinking the cap was a radio part, connected it to a model train transformer, causing it to explode. The intermediate appellate court held that the jury was within its province in finding that the removal of the cap from the premises, and its subsequent transfer and detonation was foreseeable. The appeals court pointed to testimony establishing that children frequented the quarry, indeed on occasion groups of them had been brought in by the busload to observe rock formations. The Texas Supreme Court agreed, noting that "with knowledge and consent of defendant small children were permitted to play freely on the premises and in the vicinity where the dynamite cap was found...." 343 S.W.2d at 444. The jury award was affirmed.

In *Atex Const. Co. v. Farrow*, 71 S.W.2d 323 (Tex.Civ.App.1934), the defendant negligently left dynamite caps in a pasture near the residence of plaintiffs in a densely settled rural community. Children regularly played in the area and one was killed when a cap detonated. In affirming the jury's verdict, the court rejected the defendant's plea of unforeseeability. Because of the nature of the area, the presence of children, with concomitant risks, reasonably could be expected.[2]

The fact situations in *Dezendorf* and *Atex* markedly differ from that at bar. In the earlier cases, the defendants knew or should have known that children had direct and easy access to the premises where the explosive devices were negligently left. Here, the explosive devices were used in a military exercise and left on a military reservation far removed from the nearest residence, and many miles from the nearest population centers. Although not tightly secured, access to the base was restricted, trespass signs were posted, and an enclos-

---

**2.** We are mindful that these cases merely affirm jury verdicts and do not address foreseeability as a matter of law. *Compare Villareal v. United States*, 254 F.2d 595 (5th Cir.1958); affirming judgment for the government in situation involving "injuries sustained from the explosion

of a dud shell which the injured boy had picked up in his own yard where it had been deposited by plaintiff's older brother who in turn had found it on private property located behind plaintiff's residence."

ing fence, together with a chain across a cattle guard on the entry road, impeded entry.[3]

In both *Dezendorf* and *Atex* the explosive device was picked up by a child at the scene. In *Atex* the youth was killed there. In *Dezendorf* the youngster took the explosive home and gave it to a teenage brother, who was then injured by it. In the case before us, the negligence of the government agents in their handling of the simulators was much further removed from the injury, both in time and space, and was further attenuated by a criminal act and by transfer of hands. The simulator was stolen and wrongfully removed by Cartlidge from the airbase. He wrongfully gave it to a civilian roommate. That roommate negligently placed the explosive in a bureau drawer and negligently abandoned it upon moving many months later. Those acts, particularly the criminal act, intervening between the government's negligence and the injury, and the spatial distance from children, distinguish this case from *Dezendorf* and *Atex.*

In *Nixon v. Mr. Property Management, Inc.,* 690 S.W.2d at 550, the Texas Supreme Court recently reaffirmed its adherence to

3. In two cases federal appellate courts found injuries caused by munitions abandoned on military installations near or adjacent to housing units or places where children regularly played foreseeable. *United States v. Stopplemann,* 266 F.2d 13 (8th Cir.1959) (rifle cartridge); *Stewart v. United States,* 186 F.2d 627 (7th Cir.), *cert. denied,* 341 U.S. 940, 71 S.Ct. 1000, 95 L.Ed. 1367 (1951) (grenade). The proximity of the children was a significant factor.

In others, the government was found not liable. In *Voytas v. United States,* 256 F.2d 786 (7th Cir.1958), a soldier stole explosives from a military base. The court held that the government had satisfied the high duty of care required, and did not reach the issues of foreseeability and proximate causation of the plaintiff's injuries. Similarly, in *United States v. Inmon,* 205 F.2d 681 (5th Cir.1953), a child was injured by a blasting cap found on land formerly used by the military, but the government had used appropriate care by extensively searching the area, fencing it, and posting warning signs.

Most similar to the case at bar is *Schmidt v. United States,* 179 F.2d 724 (10th Cir.1950), where plaintiffs were injured by a bazooka shell which their father had taken from a military base without permission. The court held that

the rule assessing the impact of criminal conduct in the proximate cause setting:[4]

> Usually, the criminal conduct of a third party is a superseding cause relieving the negligent actor from liability. However, the tortfeasor's negligence will not be excused where the criminal conduct is a foreseeable result of such negligence.

Over four decades before, a Texas appellate court had addressed the criminal act element in a case involving an explosive. In *Murphy v. City of Rotan,* 139 S.W.2d 134, 138 (Tex.Civ.App.1940), a 17–year-old plaintiff was injured by a dynamite cap which had been taken by another minor, without plaintiff's knowledge, from a box in a town's city hall. The court held that:

> [I]t was not incumbent upon the city by virtue of any legal duty to have anticipated as reasonable and likely to happen that some individual with Don Knott's intelligence and maturity would take the caps from the city hall under the facts of this case, and by some means (not shown by any testimony) cause one to come into possession of the appellant. Hence, the independent and intervening cause which was conclusively shown.

the government was not required to foresee the unauthorized taking, and that any negligence on its part was not the proximate cause of the injury.

*See also Gordon v. United States,* 148 Ct.Cl. 31, 180 F.Supp. 591 (1960), where a soldier on leave stole grenades in North Carolina and detonated them in a bar in New York. No government liability.

4. In doing so the Texas Supreme Court relied on a line of Texas jurisprudence, and the *Restatement (Second) of Torts* § 448, which states:

> The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.

*See also* Prosser and Keeton, *The Law of Torts* § 44 at 312–13 (5th ed. 1984).

Cartlidge's act of removing the simulator from the base was a criminal act for which, as noted, he was convicted in a court martial. Consistent with the general rule quoted above, this criminal act broke the proximate cause chain unless it can be said that the theft was foreseeable. The record is devoid of any evidence which might support the proposition that the government should have been put on notice that explosives would likely be stolen during or upon completion of the "Prime Beef" training exercise. Evidence of past thefts in that area, or in that type of military operation, or some meaningful indication of the likelihood of thefts was required before such a foreseeability finding could be made. The record contains no evidence of this genre.

Finally, our decision in *Williams v. United States*, 352 F.2d 477 (5th Cir.1965), in which we found the government liable in a military-explosion case, is not contra to today's ruling. In *Williams*, an officer negligently removed an explosive device from a base and brought it to his home where it was later found by a teenager who sustained injury when it exploded. The army was found free of negligence; its procedures for handling the explosive passed muster. But the court found the officer independently negligent for removing the explosive to his home and negligently leaving it there. The removal of the explosive by the officer was not a criminal act for his duties included work with and possession of the explosives. He merely inadvertently and negligently carried a simulator off the base in his clothing. Applying the doctrine of *respondeat superior* we held the government liable for the officer's negligence in the performance of his duties. That doctrine has no application in the case now before us. As noted, Cartlidge was not acting in the line of duty when he removed the explosive from the military installation.

In light of the foregoing, we are persuaded that the injury sustained by Robert Garza was not a foreseeable consequence of the government's negligence in its handling of the M115A2 simulator on Reese Air Force Base in early 1981. Accordingly, the judgment of the district court is REVERSED.